# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**DEBORAH KUETHER,**

          **Plaintiff,**

    **v.**                    **Case No. 23-CV-948**

**KEITH P. POSLEY, et al.,**

          **Defendants.**

## DECISION AND ORDER

Before the court are the defendants' motions to dismiss the plaintiff's amended complaint. The factual allegations set forth below are from the plaintiff's amended complaint. At this stage the court accepts as true all the well-pleaded allegations in the amended complaint and draws all reasonable inferences against the defendants. *Lodholtz v. York Risk Servs. Grp.*, 778 F.3d 635, 639 (7th Cir. 2015).

### 1. Background

Deborah[1] Kuether was Milwaukee Public Schools' Director of K-12 Literacy for 12 years when Superintendent Keith Posley proposed to promote Jeremiah Holiday to be MPS's Chief Academic Officer. Because Kuether and others knew that Holiday was

---

[1] Kuether's name was misspelled "Debroah" on the docket. The Clerk shall correct it to Deborah.

incompetent, not qualified for the position, and had a history of sex and race discrimination, she and others anonymously opposed Holiday's promotion. The Milwaukee Board of School Directors nonetheless approved the promotion, albeit on an interim basis.

Posley and Holiday then sought to identify and retaliate against those who had opposed Holiday's promotion. These efforts included Posley hiring Felicia Saffold, a black woman, as Kuether's supervisor, over the hiring committee's recommendation of a white candidate and a Hispanic candidate. Then, with the support of Posley and Holiday, Saffold engaged in a range of discriminatory and retaliatory conduct aimed at undermining and sabotaging Kuether.

This eventually led to Kuether being reassigned to an undefined role in a high school where she was placed in an unsanitary basement office and deprived of a phone, computer, internet, or even set responsibilities.

Kuether continued to attempt to bring a variety of concerns to the attention of the Board but was repeatedly thwarted. She also made various statements to local media.

Kuether filed this action on July 14, 2023. (ECF No. 1.) A month later she filed an amended complaint. (ECF No. 2.) She alleges claims for violation of the Due Process Clause of the Fourteenth Amendment (Count 1); "Retaliation Against Employees in Violation of the FLSA and Wis. Stat. Sec. 111.04" (Count 2); violation of the First Amendment (Count 3); discrimination on the basis of race (Count 4); discrimination

based on sex (Count 5); retaliation under Title VII (Count 6); and a violation of Wisconsin's public records law (Count 7). (ECF No. 2.) She named as defendants the Milwaukee Public School District (MPS), Posley, Holiday, the Milwaukee Board of School Directors, and every member of the Board—Robert Peterson, Marva Herndon, Marcela Garcia, Jilly Gokalgandhi, Henry Leonard, Megan O'Halloran, Erika Siemsen, Sequanna Taylor, and Aisha Carr. She alleges that every claim is against every defendant. She does not specify the legal basis for her race or sex discrimination claims, *e.g.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.*, the Wisconsin Fair Employment Act, Wis. Stat. § 111.31, *et. seq.*, or, with respect to her race discrimination claim, 42 U.S.C. § 1981. In response to the defendants' motions to dismiss, Kuether makes clear that her race and sex discrimination claims are under Title VII alone. (ECF No. 26 at 10, 20-24.) She also conceded, as discussed below, that all claims are not proper against all defendants.

On October 13, 2023, the defendants filed two motions to dismiss. (ECF No. 17, 21.) All defendants are represented jointly, and both motions are filed on behalf of all defendants. The defendants offer no explanation for filing two, separate motions, but their combined briefs (ECF Nos. 18, 22) exceed the 30-page limit that would apply if the defendants had filed a single motion, *see* Civ. L.R. 7(f). Although attorneys have not historically engaged in such maneuvers to evade the strictures of the court's Local

Rules, the defendants' filing may suggest a need for the court to amend its rules to make explicit what had been implicit.

### 2. Motion to Dismiss Standards

"A defendant may enforce the service of process requirements through a pretrial motion to dismiss." *Cardenas v. City of Chi.*, 646 F.3d 1001, 1005 (7th Cir. 2011) (citing Fed. R. Civ. P. 12(b)(5)). "The plaintiff bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service." *Id*. If the court finds that the plaintiff has not properly served a defendant and lacks good cause for failing to do so, the court must either dismiss the action against any defendant who was not properly served or specify a deadline by which the plaintiff must serve the defendant. *Id.* (citing Fed. R. Civ. P. 4(m)).

Under Rule 12(b)(6), a defendant may move to dismiss a claim on the ground that the plaintiff has failed to "state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim satisfies this pleading standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-

56. "Even after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, 556 U.S. 662, a complaint in federal court pleads claims, not facts." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021).

In resolving a motion to dismiss under Rule 12(b)(6), the court ordinarily may consider only the pleadings. However, the court can also consider documents referred to in the plaintiff's complaint that are central to a claim. *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994); *see also Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 881 (7th Cir. 2022) ("In evaluating the sufficiency of the complaint, we consider documents integral to the complaint that might aid in determining whether a plaintiff is entitled to relief.").

### 3. Timeliness and Service

Kuether filed this action on July 14, 2023 (ECF No. 1), and then filed an amended complaint a month later on August 14, 2023 (ECF No. 2). That same day, Kuether, by counsel, faxed the amended complaint to counsel for the defendants and included a request that the defendants waive service. Also on that same day each defendant waived service. (ECF Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14.)

The defendants now argue that the court must dismiss this action because they were never properly served with Kuether's *original* complaint. This omission is material, they argue, in light of the requirement that she file her action within 90 days of receipt of her right to sue letter.

The EEOC issued Kuether a right to sue letter on April 19, 2023. (ECF No. 29 at 4.) She filed her original complaint 86 days later. It was a total of 117 days after the EEOC issued its right to sue letter that she filed her amended complaint.

As the court understands the defendants' argument, it is, in effect, that, because Kuether failed to properly serve her original complaint, her original complaint did not stop the 90-day filing clock. The court can consider only Kuether's amended complaint (because that was the only one regarding which the defendants waived service). Because the amended complaint was filed more than 90 days after Kuether would have received her right to sue letter, this action is untimely.

The defendants cite no authority endorsing their novel theory regarding the interplay among amended complaints, *see* Fed. R. Civ. P. 15(a), the deadline for service, *see* Fed. R. Civ. P. 4(m), and the right to sue deadline, *see* 42 U.S.C. § 2000e-5(f)(1). Instead, they rely only on the general principles that lawsuits must be filed within 90 days of receipt of a right to sue letter and defendants must be served within 90 days of a plaintiff filing a complaint. Those principles, however, do not support the defendants' position.

The 90-day clock stops with when a civil action is "brought" against the respondent named in the EEOC charge. 42 U.S.C. § 2000e-5(f)(1) ("within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge … by the person claiming to be aggrieved"). A lawsuit

6

is "brought," at least in federal court, by the filing of a complaint. *See Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 (1984) (per curiam) (quoting Fed. R. Civ. P. 3). Service is not material to the 90-day deadline under 42 U.S.C. § 2000e-5(f)(1). *See, e.g.*, *Robinson v. Fairfield*, 750 F.2d 1507, 1512 (11th Cir. 1985).

Kuether filed her complaint on July 14, 2019. The original complaint contained her Title VII claims. Thus, this case does not implicate questions of whether new Title VII claims in an amended complaint sufficiently relate back to the original complaint. *Cf. Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 961 (10th Cir. 2012). Nor do the defendants argue that her initial complaint was deficient such that it could not be characterized as a complaint under Rule 8. *Cf. Brown*, 466 U.S. at 148 (holding that mailing a copy of a right to sue letter and a motion for the appointment of counsel to district court was insufficient to stop the 90-day clock). The 90-day clock under 42 U.S.C. § 2000e-5(f)(1) stopped for Kuether when she brought an action by filing her initial complaint on July 14, 2019.

Kuether filing her complaint then triggered a separate 90-day clock—the deadline by which Kuether had to serve the defendants. *See* Fed. R. Civ. P. 4(m). A month into this 90-day period, and without having served the defendants, Kuether filed an amended complaint, on August 14, 2023. (ECF No. 2.) This was permissible under Rule 15(a)(1)(A); because she had not served the defendants, the 21-day clock under the Rule never started to run. The defendants were then provided a copy of the amended

complaint and waived service the same day. (ECF Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14.)

The question posed by the defendants' motion is whether Kuether was still required to serve the defendants with her original complaint. The defendants do not point to any authority suggesting that she was required to do so, and the court cannot discern any reason for such a requirement. Aside from narrow circumstances not relevant here, the filing of an amended complaint renders an original complaint a nullity. *See Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 674 (7th Cir. 2019) (quoting *Wellness Cmty. v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995)). Requiring service of an original complaint under the circumstances presented serves no plausible benefit to a defendant. Conversely, forgoing service cannot plausibly prejudice the defendant.

Kuether timely brought an action against the defendants by filing her initial complaint on July 14, 2023. She then timely obtained the defendants' waivers of service (albeit with respect to the amended complaint which, in the interim, had supplanted the original complaint). Consequently, this action is timely under 42 U.S.C. § 2000e-5(f)(1) and the court has personal jurisdiction over the defendants. Accordingly, the defendants' first motion to dismiss (ECF No. 17) will be denied.

### 4. Defendants' Second Motion to Dismiss

The defendants alternatively ask the court to enter an order

> dismissing all claims for discriminating and/or retaliation which were not included in plaintiff's discrimination complaint filed in the Wisconsin Department of Workforce Development – Equal Rights Division ("ERD"); dismissing all claims for discriminating and/or retaliation which occurred prior to June 25, 2020; dismissing Counts 2, 4, 5 and 7 in their entirety; and dismissing all claims asserted directly against Keith Posley, Jeremiah Holiday, Robert Peterson, Marva Herndon, Marcela Garcia, Jilly Gokalgandhi, Henry Leonard, Megan O'Halloran, Erika Siemsen, Sequanna Taylor and Aisha Carr.

(ECF No. 21 at 2.)

### 4.1. Exhaustion

Before a plaintiff may pursue a civil suit under Title VII she must exhaust her administrative remedies. *See Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). Then "a plaintiff filing suit in federal court 'may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Id.* (quoting *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (internal quotation marks omitted)).

In pleading her claims under Title VII, Kuether refers to "[t]he Defendants" without offering any further specificity. (ECF No. 2, ¶¶ 234, 235, 238, 239, 243.) Thus, her amended complaint could be fairly read as attempting to assert these claims against MPS, the school board, and the 11 individuals she names as defendants. The defendants argue that only MPS can be a proper defendant with respect to Kuether's Title VII

claims because it was the only party named as a respondent in Kuether's administrative charge.

The defendants are correct that the 11 individuals Kuether named as defendants in her amended complaint are not proper defendants with respect to her Title VII claims—but for a different reason. A plaintiff may assert a Title VII claim only against an employer. As Kuether acknowledges in response (ECF No. 26 at 2), individuals, even managers or supervisors, are not employers under Title VII. *Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 493 (7th Cir. 1998).

The Board and MPS, however, may either or both be an employer under Title VII. Kuether asserts that her "Title VII claims only lay against her employer the Milwaukee Board of School Directors, Milwaukee Public Schools." (ECF No. 26 at 2.) Kuether's punctuation suggests that she may regard "Milwaukee Board of School Directors, Milwaukee Public Schools" as a single entity, or perhaps "Milwaukee Public Schools" as a sub-unit of "Milwaukee Board of School Directors" rather than two separate defendants. Her amended complaint, however, makes clear that MPS and the Board are two separate entities. (ECF No. 2, ¶¶ 20, 21.)

Insofar as there is a material distinction between MPS and the Board, it would appear that Kuether has not exhausted her administrative remedies against the Board. Her administrative complaint named only Milwaukee Public Schools. (ECF No. 22-1 at 3; 5, ¶ 1.) She offers no argument that such an omission should be overlooked. *Cf. Knafel*

*v. Pepsi-Cola Bottlers, Inc.*, 899 F.2d 1473, 1481 (6th Cir. 1990); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir. 1999). Nonetheless, the defendants in reply concede that MPS and the Board are both proper defendants with respect to Kuether's Title VII claims. (ECF No. 30 at 3 ("plaintiff's discrimination / retaliation claims should be dismissed as to all defendants other than Milwaukee Board of School Directors and Milwaukee Public Schools").) Because the exhaustion requirement may be waived, *Ameritech Benefit Plan Comm. v. Commun. Workers of Am.*, 220 F.3d 814, 819 (7th Cir. 2000), the court need not consider the issue further in light of the defendants' concession.

The defendants further argue that any allegation regarding a violation of Title VII occurring after January 7, 2021, must be dismissed because Kuether did not include those allegations in her administrative complaint. (ECF No. 22 at 15.) Kuether responds, "Defendants misunderstand the continuing violation doctrine (see 'Section C' below)." (ECF No. 26 at 3.)

Section C of Kuether's response addresses her claims for retaliation under the FLSA and Wis. Stat. § 111.04. (ECF No. 26 at 6.) The section is devoid of any discussion of the continuing violation doctrine. Section B, on the other hand, refers to the continuing violation doctrine vis-à-vis the 300-day statute of limitations for claims under Title VII, 42 U.S.C. §2000e-5. It does not, however, contain any explanation as to how the continuing violation doctrine applies vis-à-vis the distinct administrative exhaustion requirement. It is not the court's role to make arguments for a party. *Fabriko*

*Acquisition Corp. v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008); *United States v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008). Undeveloped arguments are forfeited. *Alden*, 527 F.3d at 664.

Nonetheless, as to the defendants' argument that "any allegations of discrimination and/or retaliation in violation of Title VII stemming from conduct which occurred after January 7, 2021 must be dismissed" (ECF No. 22 at 15), the court must deny the motion. "A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis in original). In seeking to bar consideration of any alleged discrimination occurring after January 7, 2021, MPS impermissibly seeks to dismiss a part of Kuether's Title VII claims. The court cannot grant such relief on a motion to dismiss.

Therefore, as to the defendants' motion to dismiss Kuether's Title VII claims on exhaustion grounds, accepting Kuether's assertion that her amended complaint does not contain a Title VII claim against any individual, the motion will be denied.

### 4.2. Discrimination or Retaliation Occurring Prior to June 25, 2020

The defendants again try to narrow Kuether's Title VII claims, arguing that acts of discrimination or retaliation occurring prior to June 25, 2020, are not actionable

because they occurred more than 300 days before she filed her administrative complaint.

Again, the court at this stage is limited to dismissing claims and cannot dismiss parts of claims. *BBL,* 809 F.3d at 325. A motion for summary judgment is the appropriate means for narrowing a plaintiff's claims.

### 4.3. The Fair Labor Standards Act

"The Fair Labor Standards Act of 1938 (Act) sets forth employment rules concerning minimum wages, maximum hours, and overtime pay." *Kasten v. Saint-Gobain Performance Plastics Corp.,* 563 U.S. 1, 4 (2011) (citing 52 Stat. 1060, 29 U.S.C. § 201 *et seq.*). "Under the FLSA, it is unlawful for an employer 'to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA].'" *Kasten v. Saint-Gobain Performance Plastics Corp.,* 703 F.3d 966, 972 (7th Cir. 2012); 29 U.S.C. § 215(a)(3). The defendants argue that Kuether failed to allege a plausible claim under the FLSA.

Kuether asserts (ECF No. 26 at 7-8) that she adequately pled a claim under 29 U.S.C. § 215(a)(3) because she alleged in her amended complaint: "In fall 2020, Kuether and her peers reported multiple labor law violations including FMLA violations to Holiday verbally and in writing." (ECF No. 2, ¶ 48.)

13

This allegation is insufficient to form the foundation for a FLSA retaliation claim under 29 U.S.C. § 215(a)(3). Kuether offers no support for her position that 29 U.S.C. § 215(a)(3) proscribes retaliation for an employee's complaint about a violation of *any* labor law. Rather, the text explicitly limits its application to retaliation for complaints of violations under or related to the FLSA. The only specific example Kuether provides—a complaint under the FMLA—could not form the basis for a claim under 29 U.S.C. § 215(a)(3) because the FMLA is not "under or related to" the FLSA. The FMLA contains its own anti-retaliation provision. *See* 29 U.S.C. § 2615(a). Kuether has not directed the court to anything in her amended complaint that could plausibly constitute a complaint under or related to the FLSA. The court will grant the defendants' motion to dismiss Kuether's FLSA claim.

### 4.4.  Wis. Stat. § 111.04

In conjunction with her claims under the FLSA, Kuether also alleges a claim under Wis. Stat. § 111.04. (ECF No. 2, ¶¶ 218-21.) This statute guarantees for employees "the right of self-organization and the right to form, join or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in lawful, concerted activities for the purpose of collective bargaining or other mutual aid or protection." Wis. Stat. § 111.04(1). It does not, as Kuether concedes in her response, create a cause of action. (ECF No. 26 at 8.)

Instead, she argues that Wis. Stat. § 111.04 reflects Wisconsin's public policy, and under Wisconsin law an employer cannot discharge an employee in violation of public policy. (ECF No. 26 at 8.) She asserts that she has "articulated a well-defined public policy, namely working with other employees to oppose Holiday's discrimination and retaliation, for which her employer discharged her. Therefore, the claim is well plead [sic]." (ECF No. 26 at 9.)

That theory, however, is not articulated in her amended complaint. There is no hint in her complaint that she is alleging a state law claim of wrongful discharge under the theory recognized in, *e.g.*, *Brockmeyer v. Dun & Bradstreet*, 113 Wis. 2d 561, 572-73, 335 N.W.2d 834, 840 (1983). Although Kuether sets forth that theory in her response to the defendants' motion to dismiss, a plaintiff cannot amend her complaint through a response to a motion to dismiss, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).

Because Kuether has not pled a state law claim for wrongful discharge, and therefore such a claim is not before the court, it would be inappropriate for the court at this time to assess whether or how Wis. Stat. § 111.04 may give rise to a wrongful discharge claim. The defendants' motion to dismiss Kuether's claim under Wis. Stat. § 111.04 will be granted.

### 4.5. 42 U.S.C. § 1983

#### 4.5.1. Individual Capacity

The defendants note that a plaintiff must prove that the alleged actions were done in the defendants' capacities as state actors and not as private individuals. They then assert, "As such, there is no basis for individual liability against those defendants and plaintiff's § 1983 claims against them individually should be dismissed." (ECF No. 22 at 19.) Of course, what the plaintiff must *prove* is not at issue at this stage. At the motion to dismiss stage the court is concerned with what a plaintiff must *plead*.

The only argument that the defendants offer regarding the sufficiency of the plaintiff's pleading is that

> the allegations against all of the individual defendants pertains to conduct performed in their official capacities working for MPS or acting as School Board Members. Since plaintiff's Amended Complaint fails to allege any actions or inaction performed by Holiday, Posley, Peterson, Herndon, Garcia, Gokalgandhi, Leonard, O'Halloran, Siemsen, Taylor or Carr in their individual capacities which give rise to her § 1983 claims, those defendants should dismissed in their individual capacities.

(ECF No. 22 at 20.)

The defendants' argument appears to reflect a basic misunderstanding as to the nature of an individual capacity claim under § 1983 and a conflation of "official capacity" and "state actor." *See, e.g.,* § 6:52, Crucial distinction between official capacity and individual capacity damages actions, 2 Nahmod, Civil Rights & Civil Liberties Litigation: The Law of Section 1983. Seeing as the defendants have wisely abandoned

16

this argument by failing to address it in their reply, the court finds it unnecessary to further elaborate on why their argument fails.

### 4.5.2. Official Capacity

A suit against a government actor in his or her official capacity is effectively a suit against the government entity. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). The defendants argue that the constitutional claims against the individual defendants in their official capacities must be dismissed because they are redundant to the constitutional claims against MPS and the Board.

Kuether concedes the defendants' argument but argues: "However, Defendants who are records custodians are properly plead [sic] in their official capacity by statutory mandamus for enforcement of Wisconsin's Public Records law." (ECF No. 26 at 12.)

Mandamus with respect to Wisconsin's open record law is distinct from Kuether's constitutional claims. Kuether having conceded that her official capacity claims against the individual defendants are redundant to her constitutional claims against MPS and the Board, those official capacity claims will be dismissed.

### 4.6. Race Discrimination

The defendants incorrectly argue that Kuether has failed to state a claim for race discrimination because she failed to allege in her amended complaint the elements of a prima facie case. The Supreme Court explicitly and unanimously rejected this argument more than two decades ago. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *Carlson*

17

*v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014); *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 834 (7th Cir. 2015) ("The pleading standards in Title VII cases are, of course, different from the evidentiary burden a plaintiff must subsequently meet."). Title VII claims are not subject to a heightened pleading requirement. *Carlson*, 758 F.3d at 827. Pleading an employment discrimination claim is simple. "It is enough for a plaintiff to assert that she was treated worse because of protected characteristics." *Graham*, 8 F.4th at 627 (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010). "Whether she can prove this is a subject for a later stage of the litigation." *Id.*

Notwithstanding Kuether's kitchen sink approach to pleading whereby she includes extensive and often tangential allegations of malfeasance, she offers scant allegations as to how she suffered discrimination on the basis of her race. For example, she alleges that Posley promoted Holiday and Saffold (ECF No. 2, ¶¶ 3, 78-85) because they were black. She alleges that Holiday had a history of race discrimination (ECF No. 2, ¶ 32) and was found to have relied on race when he ordered a subordinate to hire a black candidate over a more qualified white candidate (ECF No. 2, ¶ 54). She also noted Holiday had stated his belief that it was the norm for white women to complain about black leaders. (ECF No. 2, ¶ 66.)

But Kuether does not allege that she was either of the white applicants passed over for any of those positions. Instead, she contends that these allegations suggest

"systematic discrimination at Milwaukee Public Schools by the Board, the Superintendent and Dr. Holiday," which support the inference that these defendants discriminated against her. (ECF No. 26 at 23.)

In her response (ECF No. 26 at 20-24) to the motion to dismiss, however, Kuether does not connect the defendants' alleged racial animus to any adverse employment action. Thus, the court turns to the amended complaint and notes that she alleges, "The Defendants constructively discharged Kuether because she is white" (ECF No. 2, ¶ 234), and, "The Defendants altered the terms and conditions of Kuether's employment because she is white," (ECF No. 2, ¶ 235).

These allegations are minimal. But Rule 8 does not require more. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) ("in order to prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex"). Viewed in light of Posley's and Holiday's alleged track records of favoring black employees, it is plausible that, but for Kuether's race, she would not have suffered an adverse alteration of the terms and conditions of her employment or been constructively discharged. Therefore, the defendants' motion to dismiss Kuether's race discrimination claim will be denied.

### 4.7. Sex Discrimination

Kuether offers only the same sorts of conclusory allegations in support of her sex discrimination claim. (ECF No. 2, ¶¶ 3, 238-39.) However, she does not allege any similar pattern of either Posley or Holiday discriminating against women. To the contrary, one of the allegedly less qualified candidates that Holiday and Posley hired was a woman. (ECF No. 2, ¶ 82.) The only allegations that Kuether offers suggesting that any decisionmaker was biased against women is the discrimination complaint that Holiday filed with the Wisconsin Department of Workforce Development alleging that he was hired on an interim basis because of his race. (ECF No. 2, ¶ 62-72.) Holiday wrote that he felt "[t]his is the White people's/women's playbook, accuse the black man of harassment and being inappropriate with white women." (ECF No. 2, ¶ 70.) He further stated he found out about "multiple white women (I am sure who conspired together)" having met with a supervisor to discuss his performance. (ECF No. 2, ¶ 71.) He continued, "The white women complained about the leadership of a black man because they don't want to be asked to do their job and don't want to be held accountable for their work in the worst district in the state." (ECF No. 2, ¶ 71.)

Holiday's statements could support the inference of his subjective hostility towards, or at a minimum suspicion of, white woman such that it is plausible that, if Kuether had been a man, she would not have suffered an adverse alteration of the terms

and conditions of her employment or been constructively discharged. Therefore, the defendants' motion to dismiss Kuether's sex discrimination claim will be denied.

### 4.8. Open Records Claim

Kuether's amended complaint alleges, "Milwaukee Public Schools violate[d] Public Records Law when responding to Kuether's Public Records Requests." (ECF No. 2 at 39.) This allegation relates to a records request that she made "to the Board of School Directors" on March 27, 2022 (ECF No. 2, ¶ 194), and a request she made for her personnel file in early 2021 (ECF No. 2, ¶¶ 202-10). She alleges: "The Defendant's [sic] actions in failing to produce or delaying production of records re3quested [sic] by Kuether including her personnel file have caused and will continue to cause injury to Kuether; its actions also continue to deprive the public of its rights under the Public Records Law." (ECF No. 2, ¶ 221.) She asks the court to "[o]rder the defendants to produce the requested records." (ECF No. 2, ¶ 251.)

The defendants argue that Kuether's open records claim must be dismissed because Wisconsin's law does not permit a claim for damages without an accompanying mandamus action.

The defendants are correct as to the law, *see Wis. Carry, Inc. v. City of Milwaukee*, 35 F. Supp. 3d 1031, 1039 (E.D. Wis. 2014), but wrong as to the facts. Kuether's amended complaint asks the court to order the defendants to disclose the demanded records. (ECF No. 2, ¶ 251.) Such a demand is the heart of a mandamus action under Wisconsin's

open records law. Granted, Kuether's amended complaint never uses the word "mandamus," but the defendants do not point to any authority suggesting that use of the specific term is required. The modern American form of pleading tends to eschew demands for magic words.

In reply, the defendants raise a new argument—a federal court is prohibited from issuing mandamus against a state official for a violation of state law. (ECF No. 30 at 16.) Having raised this argument for the first time in reply, it is not properly before the court and is therefore disregarded. *See Nationwide Ins. Co. v. Cent. Laborers' Pension Fund*, 704 F.3d 522, 527 (7th Cir. 2013).

However, as discussed below, the defendants separately argue that Kuether has failed to allege a plausible claim against any of the individual Board member defendants. As it relates to Kuether's open records claim, the only argument she offers is that the Board members are proper defendants for such a claim in their official capacities. (ECF No. 26 at 24-26.) But that does not establish that she has alleged such a claim against each of the Board member defendants.

While an elected official such as the Board member defendants is a records custodian under Wisconsin's open records law, he or she is a custodian only of his or her own records or the records of his or her office. Wis. Stat. § 19.33(1). The amended complaint alleges that Kuether made an open records request of the Board, not of each Board member defendant individually. (ECF No. 2, ¶ 194.) The custodian for a request

of Board records would be the individual as set forth under Wis. Stat. § 19.33(4). The amended complaint does not adequately allege that any defendant is the custodian of the Board's records. Therefore, Kuether has not alleged an open records claim against any of the individual defendants.

The defendants, however, have not demonstrated that an open records claim cannot be alleged broadly against the entity itself, *i.e.*, MPS and the Board. Consequently, the defendants' motion to dismiss the plaintiffs' open records claim will be granted as to all defendants except for MPS and the Board.

### 4.9. Sufficiency of the Allegations Against the Individual Board Member Defendants

Kuether's amended complaint appears to allege all claims against all defendants. (ECF No. 2, ¶¶ 215-16, 220-21, 231, 234-35, 238-39, 243, 221.) However, as noted above, certain of her claims are cognizable against only particular defendants. For example, she has plausible Title VII claims (Counts 4, 5, and 6) against only MPS and the Board. Kuether further concedes that she lacks an open records claim (Count 7) against Holiday.

The individual Board member defendants—Peterson, Herndon, Garcia, Gokalgahdni, Leonard, O'Halloran, Siemsen, Taylor, and Carr—allege that the amended complaint lacks sufficient allegations to state any sort of claims against them. (ECF No. 22 at 21-25.)

In response, under the heading where she addresses her claims against the individual school Board member defendants, Kuether discusses only her First Amendment claim. (ECF No. 26 at 12-20.) And she concedes that her First Amendment claim against Taylor should be dismissed. She states, "While Sequanna Taylor participated in the January 21, 2021 board meeting and could be liable on that ground for chilling Plaintiff's free speech, but Plaintiff is willing to dismiss against Ms. Taylor agrees that her claims against Ms. Taylor should be dismissed [sic]." (ECF No. 26 at 13, fn 1.)

As to the rest of the individual Board member defendants, Kuether argues that, because the Board violated her First Amendment rights, she has a First Amendment claim against each individual Board member. She argues that the individual Board member defendants are liable because they violated her free speech rights when they "ratified the Superintendent's retaliation against [her] to 'reset her behavior" and they retaliated against her for public statements she made after January 21, 2021, "when she began speaking to the media and appearing at school Board meetings." (ECF No. 26 at 14.) She argues she does not need to offer specific allegations against individual Board members. She states, "The Defendants point to no rule, nor has the Plaintiff found anything to support Defendants' contention that each Board member must be explicitly mentioned in any paragraph in which they were personally involved or that the Board members cannot be referred to collectively as 'the Board'." (ECF No. 26 at 13.)

It is a well-established and a basic rule of pleading that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. While a plaintiff may refer to the defendants collectively to assert certain common allegations against them, she cannot plead a claim against an individual defendant simply by relying on allegations that lump all defendants together. Because liability is individualized, so, too, must be the plaintiffs' allegations.

The fact that a person was a member of the board that allegedly violated the plaintiff's rights, standing alone, is not a sufficient basis to state a claim against that individual. Rather, the plaintiff must plausibly allege that "the individual defendant … 'caused or participated in a constitutional deprivation.'" *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (quoting *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994)); *Klean v. Bd. of Educ.*, No. 08 C 6233, 2010 U.S. Dist. LEXIS 97472, at *11 (N.D. Ill. Sep. 17, 2010); *see also Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021) ("For constitutional violations under § 1983, 'a government official is only liable for his or her own misconduct.'" (quoting *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015))); *cf. Conner v. Reinhard*, 847 F.2d 384, 397 (7th Cir. 1988) (discussing *Miller v. City of Mission, Kansas*, 705 F.2d 368 (10th Cir. 1983)); *Bostwick v. Watertown Unified Sch. Dist.*, No. 13-C-1036, 2015 U.S. Dist. LEXIS 15212, at *22 (E.D. Wis. Feb. 9, 2015); *Tarvin v. Bd. of Educ. of E. St. Louis Sch. Dist. No. 189*, No. 09-655-GPM, 2010 U.S. Dist. LEXIS 153656, at *10 (S.D. Ill. Nov.

22, 2010); *Bennet v. Roberts*, No. 96 C 6917, 2001 U.S. Dist. LEXIS 3363, at *26 (N.D. Ill. Mar. 15, 2001) (citing *Brokaw v. Mercer County*, 235 F.3d 1000, 1012 (7th Cir. 2000)); *Cameli v. O'Neal*, No. 95 C 1369, 1997 U.S. Dist. LEXIS 9034, at *57 (N.D. Ill. June 20, 1997).

As to Kuether's allegations against each individual Board member defendant, her arguments are accompanied by frequent misrepresentations of the allegations in the amended complaint. For example, with respect to Peterson, she represents that she alleged that Peterson "directed additional security guards to intimidate Kuether" (ECF No. 26 at 18 (citing ECF No. 2, ¶ 168)) and "[t]he security guards would follow Kuether throughout the building and film Kuether with their personal devices" (ECF No. 26 at 18 (citing ECF No. 2, ¶ 171)). But paragraph 168 of the amended complaint makes no mention of Peterson. And paragraph 171 is totally unrelated to guards allegedly following Kuether. (ECF No. 2, ¶ 171.)

Another example involves O'Halloran. Kuether's brief states, "O'Halloran's [sic] cut off the Plaintiff's microphone at a public meeting (both in virtual and in-person settings). ([ECF No. 2] ¶ ¶181, 184, 189, 191-193.)." (ECF No. 26 at 19.) But paragraphs 181, 189, 193 of the amended complaint do not identify who turned off Kuether's microphone; and paragraphs 184, 191, and 192 are unrelated to her microphone having allegedly been turned off.

Kuether does not point to any specific allegations in the amended complaint that support a First Amendment claim against Siemsen, Gokalgandhi, Garcia, Leonard, and Carr. Instead, she lumps them together and argues that they

> caused and participated in constitutional deprivation on January 21, 2021 when they allowed a deprivation that would likely deter Kuether's future First Amendment activity in the future as follows.

> Defendants Erika Siemsen, Jilly Gokalgandhi, Marcela (Xela) Garcia, Henry (Hal) Leonard, and Aisha Carr caused and participated in the same efforts as Defendant Peterson with respect to curtailing the Plaintiff's ability to participate in public meetings.

(ECF No. 26 at 20.)

It is unclear what Kuether means when she asserts that these defendants "caused and participated in the same efforts as Defendant Peterson with respect to curtailing the Plaintiff's ability to participate in public meetings." Her amended complaint contains only three substantive allegations naming Peterson:

> 128. In response to Kuether's public criticism, members of the Board, including Bob Peterson, Marva Herdon, Larry Miller, Erika Siemsen, Sequanna Taylor, Megan O'Halloran, and Paula Phillips, made negative statements about Kuether to third parties, including parties who are not affiliated with MPS.

> * * *

> 144. On April 11, 2023, Kuether was present during service of Bob Peterson for a deposition in a discrimination complaint for another MPS employee.

> 145. Bob Peterson, Marva Herdon, and Marcela Garcia filed affidavits containing maliciously false statements alleging that Kuether assaulted Peterson in the process of service.

(ECF No. 2.) None of these allegations connect Peterson's actions to Kuether's First Amendment activity.

Kuether's amended complaint offers broad allegations that she was prevented from speaking at meetings. For example, "Kuether provided testimony that was not in support of the item and while giving oral testimony, Kuether's microphone was turned off and Kuether was electronically removed from the meeting citing that Kuether was 'off topic'." (ECF No. 2, ¶ 189.) By using the passive voice Kuether failed to state a claim against any individual Board member. The individual Board member who directed her removal could plausibly be liable, but the fact that she was removed from a Board meeting is an insufficient basis for holding every Board member who was present personally liable.

It is only with respect to O'Halloran that the amended complaint contains even the barest of allegations of personal actions related to an infringement of Kuether's First Amendment rights. Kuether alleges, "During her testimony, Kuether was interrupted by Board director O'Halloran, who told her she was 'off topic'. O'Halloran spoke over Kuether telling her that her 'time has expired' and Kuether's microphone was turned off." (ECF No. 2, ¶ 193.)

The public comment period during government meetings is a public forum to which the First Amendment applies. *Surita v. Hyde*, 665 F.3d 860, 869 (7th Cir. 2011) (citing *City of Madison Joint Sch. Dist. No. 8 v. Wis. Pub. Emp't Relations Comm'n*, 429 U.S.

167, 176, 97 S. Ct. 421, 50 L. Ed. 2d 376 (1976)). A board member preventing a person from speaking during such a meeting may violate the First Amendment. *See, e.g., Surita*, 665 F.3d at 871; *Hoeppner v. Town of Stettin*, No. 14-cv-162-bbc, 2015 U.S. Dist. LEXIS 62061, at *7 (W.D. Wis. May 12, 2015) (denying town board chairperson's motion for summary judgment regarding claim that he violated plaintiff's First Amendment rights by limiting plaintiff's comments at board meetings); *Theyerl v. Manitowoc Cty.*, 41 F. Supp. 3d 737, 745 (E.D. Wis. 2014) (denying county board chairman's motion for summary judgment regarding claim that he violated plaintiff's First Amendment rights by barring him from speaking at board meeting until he provided evidence to support his prior allegations).

Kuether offers only a very thin reed on which to rest a First Amendment claim against O'Halloran, but liberally construing Kuether's allegation in light of the amended complaint as a whole, it is plausible that O'Halloran's actions violated Kuether's rights under the First Amendment by preventing her from speaking at a public meeting. Therefore, the Board members' motion to dismiss all claims against them individually will be granted with the exception of Kuether's First Amendment claim against O'Halloran.

### 5. Conclusion

Kuether timely brought this action by filing her initial complaint within 90 days of receipt of her right to sue letter. She then timely amended her complaint and

obtained the defendants' waivers of service regarding that amended complaint. The original complaint having been mooted by the filing of the amended complaint, Kuether was not required to serve the original complaint. Accordingly, the defendants' first motion to dismiss (ECF No. 17) will be denied.

As to the defendants' second motion to dismiss, because the court is precluded from dismissing parts of claims at the motion to dismiss stage, the defendants' motion to dismiss portions of Kuether's claims relating to events occurring before June 25, 2020, or after January 7, 2021, will be denied without consideration of the merits of the defendants' arguments.

The defendants' motion to dismiss will be granted with respect to Kuether's claims under the FLSA. Kuether has not pled any plausible claim of retaliation under 29 U.S.C. § 215(a)(3). The defendants' motion will also be granted as to Kuether's claim under Wis. Stat. § 111.04. The statute does not provide for a private cause of action, and the amended complaint does not contain a related wrongful discharge claim.

Kuether has adequately alleged a constitutional claim under § 1983 against the defendants in their individual capacities. However, her constitutional claims against these persons in their official capacities are redundant to her claims against the government entities—the Board and MPS—and will be dismissed.

As to the individual Board member defendants, Sequanna Taylor is dismissed as a defendant pursuant to Kuether's concession she lacks a claim against Taylor. She has

alleged a plausible First Amendment claim against only O'Halloran. The First Amendment claim against all of the other Board member defendants will be dismissed.

The defendants' motion will be denied as to Kuether's race and sex discrimination claims. Although the allegations are superficial, they are sufficient to satisfy the low standard under Rules 8 and 12(b)(6).

**IT IS THEREFORE ORDERED** that the defendants' first motion to dismiss (ECF No. 17) is **denied**.

**IT IS FURTHER ORDERED** that the defendants' second motion to dismiss (ECF No. 21) is **granted in part and denied in part**. The motion is granted with respect to Kuether's claims under the FLSA and Wis. Stat. § 111.04. The motion is further granted with respect to Kuether's constitutional claims against the defendants in their official capacities. The motion is further granted with respect to Kuether's claims against Robert Peterson, Marva Herndon, Marcela Garcia, Jilly Gokalgandhi, Henry Leonard, Megan O'Halloran, Erika Siemsen, Sequanna Taylor, and Aisha Carr with the exception of Kuether's First Amendment claim against Megan O'Halloran. The motion is denied as to all other claims.

Dated at Milwaukee, Wisconsin this 19th day of January, 2024.

WILLIAM E. DUFFIN
U.S. Magistrate Judge