# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN, MILWAUKEE DIVISION

DEBORAH KUETHER,

     Plaintiff,

v.                                    Case No. 23-CV-948

KEITH P. POSLEY, et al.,

     Defendants.

---

## SECOND AMENDED COMPLAINT

---

Plaintiff Dr. Deborah Kuether ("Kuether"), by her undersigned counsel, and for her Second Amended Complaint, states and alleges as follows:

## **NATURE OF CASE**

1. Plaintiff Dr. Deborah Kuether ("Kuether"), a 27-year-career educator for Milwaukee Public Schools ("MPS"), brings this action pursuant to Title VII and 42 U.S.C. § 1983.

2. Defendants as described below harmed Kuether by (i) violating Kuether's First Amendments Rights; (ii) discriminating against Kuether because of her political affiliation; (iii) denying her due process rights; (iv) discriminating against her because of her sex and race; (v) retaliating against her for opposing discrimination; (vi) denying her equal protection; and (iv) failing to produce public records.

1

3.   Thereafter, in collaboration with parents and other MPS employees, and in public forums, particularly Board meetings where she registered to speak, Kuether began advocating for Posley's resignation. In response, Defendants MPS, the Board, acted together, in concert, and under an official custom and policy, intentionally refused and restricted Plaintiff's access to and participation in designated public forums, silencing her microphone during multiple meetings, because of the content, subject matter, and viewpoint of her speech and anticipated speech.

4.   Defendants conduct is irreconcilable with the First Amendment's guarantee of free speech and violates Kuether's Section 1983 rights.

## JURISDICTION AND VENUE

5.   The Court has jurisdiction under 28 U.S.C. § 1331, as Plaintiff's Title VII and 42 U.S.C. § 1983 claims present federal questions. Plaintiff exhausted administrative requirements prior to bringing her Title VII claims.

6.   Venue is proper in the Eastern District of Wisconsin under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's federal claims occurred in the Eastern District. The Court has ancillary jurisdiction over the pendant state law claim because they arise out of the same series of events or omissions.

## PARTIES

7.  Plaintiff is an adult resident of Wisconsin who resides in the Eastern District of Wisconsin.

8.  Defendant Milwaukee Public Schools is a "First Class City School District" under Wis. Stat. Ch. 119, located in the Eastern District of Wisconsin.

9.  Defendant Milwaukee Board of School Directors is a "Board," as defined at Wis. Stat. § 119.02(1), located in the Eastern District of Wisconsin.

10. Defendant Dr. Keith Posley is an adult resident of Wisconsin who resides in the Eastern District of Wisconsin. Posley is the current Superintendent for MPS. He is named in his official and individual capacities.

11. Defendant Dr. Jeremiah Holiday is an adult resident of Wisconsin who resides in the Eastern District of Wisconsin. He is named in his official and individual capacities.

12. Defendant Calvin Fermin is an adult resident of Wisconsin who resides in the Eastern District of Wisconsin. He is named in his official and individual capacities.

13. Defendant Katrice Cotton is an adult resident of Wisconsin who resides in the Eastern District of Wisconsin. She is named in her official and individual capacities.

14. Defendant Megan O'Halloran is an adult resident of Wisconsin who

resides in the Eastern District of Wisconsin. She is a member-elect of Defendant Board as defined at Wis. Stat. § 119.01(3). She is named in her official and individual capacities.

15. Defendant Jilly Gokalgandhi is an adult resident of Wisconsin who resides in the Eastern District of Wisconsin. She is a member-elect of Defendant Board as defined at Wis. Stat. § 119.01(3). She is named in her official and individual capacities.

16. Defendant Robert Peterson, is an adult citizen of the State of Wisconsin who resides in the Eastern District of Wisconsin. He is sued in his individual capacity.

17. Defendant Marva Herndon is an adult citizen of the State of Wisconsin who resides in the Eastern District of Wisconsin. She is a member-elect of Defendant Board as defined at Wis. Stat. § 119.01(3). She is sued in her individual and official capacities.

18. Defendant, Aisha Carr, is an adult citizen of the State of Wisconsin in the Eastern District of Wisconsin. She is a member-elect of Defendant Board as defined at Wis. Stat. § 119.01(3). She is sued in her individual and official capacities.

19. Defendant Jacqueline Mann is an adult resident of Wisconsin who resides in the Eastern District of Wisconsin. She holds the statutory position of Board Clerk and works directly for the Board independent of the Superintendent. She is sued in her official and individual

capacities.

<h1 style="text-align:center">FACTS</h1>

I. **Milwaukee Public Schools Board Directors promote an unqualified administrator despite public race and sex complaints.**

20. In November 2019, Superintendent Posley, a Black male, sought the Board's approval to promote Dr. Jeremiah Holiday ("Holiday"), a Black male, to MPS Chief Academic Officer.

21. Kuether began teaching for MPS in January 1995. During her career, MPS promoted her several times, most recently, to Director of Literacy ("Literacy Manager"). As Literacy Manager, Kuether coordinated District-wide literacy projects and implemented state mandated curricula working directly under Holiday.

22. Kuether who stayed out of MPS politics because MPS has a culture of fear because of retaliation, began to work with past and present MPS employees to study the MPS administration and subject it to democratic scrutiny. Kuether and others worked together to compile publicly available information, and regularly watch and discuss meetings of MPS Board of School Directors.

23. In opposition, Kuether and fourteen (14) other MPS employees with public knowledge and experience of Holiday's unfitness for the Chief

Office of Academics promotion, history of hostile, abusive, and discriminatory behavior, and poor leadership, as well as its impacts on staff and students, wrote letters documenting what they learned.

24. Kuether organized and collected the letters, which the authors left unsigned in fear of retaliation, and presented them to Milwaukee Teachers' Education Association ("MTEA") President Amy Mizialko, who then presented the letters to the Board as a collective anonymous petition ("the Petition").

II. **MPS administration including Posley, Fermin, Holiday, and Cotton retaliate against White women who they believe made public complaints against Holiday.**

25. In a November 2019 closed Board session, Posley discussed the Petition letters criticizing Holiday. Posley told the Board that the letters were written by Holiday's supervisees. Personally attacking the whistleblowers, Posley labeled the authors as White females who did not understand Black male leadership, presenting this as a valid reason to dismiss the Petition out of hand.

26. Upon information and belief, the collective Board, and specific Board Members Peterson, Herndon, O'Halloran, Gokalgandhi accepted Posley's race and sex based justification.

27. Posley required the Board's approval to promote Holiday. The Petition forced the Board to promote Holiday on an "interim" basis.

28. Defendants Posley, Fermin, and Holiday harbored and acted upon an

anti-union sentiment against MTEA membership, motivated, in part, by their presumptions on the race and gender of the union's most politically active members, i.e., White and female, and retaliated against Plaintiff and other White females whom they even suspected of writing or even supporting the Petition, including Plaintiff, MPS Manager of Fine Arts Deborah Bowling ("Bowling"), Rochelle Sandrin ("Sandrin"), and Michelle Wade ("Wade").

29. Defendants Posley, Fermin, Cotton, and Holiday retaliated against Plaintiff by intentionally refusing to budget required funds for State mandated curriculum materials, causing a gap in access and resulting in the WI DPI issuing a series of letters describing MPS' failure to provide a Free and Appropriate Education ("FAPE") to MPS students and threatening to withhold further funding.

30. Though Kuether wrote Holiday in July 2020, indicating a dire need to take action, Posley and Fermin blamed Holiday's failure to act on Kuether as Literacy Manager, and used the incident as pretext to discipline her with a "special assignment."

31. In concert with Posley and Fermin and on his own, Holiday ignored Kuether's requests for help, withheld information from her that was critical to performing her Literacy Manager duties and providing pupil instruction, and regularly sabotaged the tasks that Holiday assigned her.

32. For example, Holiday took credit for Kuether's work, while simultaneously discrediting Kuether when presenting it to Posley and others.

33. Holiday refused to meet with Kuether to process the District-wide instructional resource purchasing plan and did not respond to Kuether's written requests for approval. Holiday did not respond to attempts by Kuether to solicit guidance on the district's literacy plan (Ambitious Instruction 3.0).

34. Kuether tried to keep MPS compliant with the WI Department of Public Instruction (DPI) Free and Appropriate Education (FAPE) law, but because of Holiday's retaliation against Kuether, the district stood to lose up to one hundred (100) million dollars in withholding of funds by DPI.

35. Holiday also sowed confusion between Kuether and her subordinates, arbitrarily targeting them for reassignment and endangering their permanent employment statuses, issuing them punitive performance evaluations, and modifying their work history in District personnel system, to retaliate against Kuether by dismantling her work team while requiring her to do the same work as before.

III. **The City of Milwaukee City Attorney Investigates Holiday and finds that he likely discriminated against Kuether and others.**

36. A January 7, 2020 report by the City Attorney's Office found Holiday

likely directed Bowling to select a candidate, at least in part, upon his race. The report described work under Holiday's leadership:

> It was a near universal sentiment that the work group under Dr. Holiday is a toxic and hostile work environment. It was commonly reported that the current work conditions are the worst they have ever been, by far and without exception. That the employees under Dr. Holiday operate in fear, intimidation, and under a watchful eye that scrutinizes every move, where he publicly ridicules for every blunder, real or fabricated. Most witnesses expressed considering filing their own complaint, of leaving the district, and of losing hope that anything will change or get better so long as Dr. Holiday is in a position of influence. They despair of having to show up to work each day, reported the stress as affecting their personal lives, and one expressed having to seek professional therapy in order to deal with the stress caused specifically by experiences with Dr. Holiday.

37. On March 3, 2020, the City Attorney sent a letter to Holiday reminding him that retaliation against employees for complaints of race discrimination is unlawful.

38. Defendants Posley and Fermin failed to heed these warnings and failed to remediate and encouraged Holiday's retaliation and harassment.

39. Rather than respond to the substance of the City Attorney's report, Holiday deflected, explicitly attacking the complaints based on the assumed race and sex of their authors, i.e., White and female, and dismissed them as invalid on that basis. For example, in a paper Holiday submitted to the Equal Rights Division, he wrote:

> It has become acceptable and the norm for white women to

launch complaints against black leaders, especially if the black leaders are in supervisory positions and have authority over the white women, and the board upholds the complaints, every single time," described the complaints against him as " false claims being filed against me by majority white women" and in line with the "This is the White people's/women's playbook, accuse the black man of harassment and being inappropriate with white women. I am a pastor...

The white women complained about the leadership of a black man because they don't want to be asked to do their job and don't want to be held accountable for their work in the worst district in the state.

There is no other explanation for this treatment other than the obvious facts of my identity as a black, male, over 40, married with four children.

40. Defendant Fermin helped prepare Holiday's ERD complaint against the District and otherwise advised Holiday how to claim race discrimination against their employer.

41. Fermin supported Holiday's discrimination and retaliation against Kuether, by refusing to act on complaints, let alone discipline Holiday, and writing a letter of recommendation for Holiday.

42. Between May and October 2020, Kuether made protected complaints that Posley arbitrarily rejected two top qualified candidates (White and Hispanic) in favor of a less qualified candidate, Felicia Saffold (Black), because of race in the process of selecting the Senior Director of Curriculum and Instruction.

43. On October 19, 2020, Holiday and Posley hired Felicia Saffold

("Saffold") a Black female as the Senior Director of Curriculum and Instruction.

44. Upon information and belief, although Saffold was less qualified for the position, the Board violated its own policy by quickly approving a raise for Saffold a month into her position.

45. Kuether served on the first hiring committee for the position filled by Saffold and knew that the hiring committee selected the two highest qualified individuals. Kuether formally complained to Matt Chason ("Chason"), the District's Senior Director of Accountability and Efficiency, about the decisions to hire Saffold over the top ranked candidates and increase her pay arbitrarily.

46. On information and belief MPS intentionally destroyed any record of the first round of hiring and would not produce application and interview records in response to public records requests.

47. On October 6, 2020, Kuether, Wade, and Sandrin met with Fermin, presenting him with a written complaint with hundreds of supporting documents, including the Petition the MTEA presented the Board, in 2019, opposing Holiday's promotion.

48. Fermin read the supporting documents including the petition, determined that Kuether was one of the White women opposing Holiday.

49. Fermin continued to protect Holiday even after meeting with the White

female whistleblowers and reading their evidence.

50. On information and belief, Fermin told Posley what he learned about Kuether to support Holiday.

51. Within weeks of becoming Senior Director of Curriculum and Instruction in October 2020, Saffold began micromanaging, harassing, and bullying Kuether. Saffold did so under direction of Posley, Fermin, and Holiday.

52. Saffold boasted that MPS hired her to "clean house."

53. Saffold (1) reassigned Kuether's subordinates and their office spaces without her knowledge; (2) monitored Kuether's subordinates' remote-work status more closely than other District employees; (3) harassed and belittled Kuether in private and in front of others; (4) reduced Kuether's duties and responsibilities; (5) disabled Kuether's access to list-serves and key emails; (6) threatened to "write up" curriculum and instruction staff for posting signs near Kuether's office congratulating Kuether on her dissertation presentation; (5) praised Kuether in private, but disparaged and made false reports about Kuether's behavior to Posley, (6) directed offensive language towards Kuether during meetings; and (7) assigning excessive and unrealistic work assignments to Kuether to create a paper trail in order to discipline Kuether.

54. Kuether frustrated Saffold because Saffold was unable to document

work duty violations against Kuether.

55. Beginning in October 2020, Kuether and Chason regularly discussed Holiday and Saffold's ongoing discriminatory and retaliatory treatment. Chason augmented Kuether's complaints from these discussions.

56. On November 4, 2020, Kuether made a formal written request seeking "job protection" pursuant to MPS whistleblower policy 6.35.

57. On November 5, 2020, one day after Kuether's request for job protection and eleven (11) months after the City attorney recommended intervention for Holiday, Fermin issued a "Coaching Pursuant to Internal Complaint" memo to Holiday.

58. In his memo, Fermin wrote, "a ninth allegation concerned potential racial bias by you in the hiring of a coordinator. The investigation found this allegation to be substantiated; I disagree."

59. Fermin also wrote in the same memo, "I feel coaching is appropriate to address concerns raised in a general allegation of a hostile work under your leadership."

60. On November 17, 2020, Kuether filed a discrimination and retaliation complaint against Holiday with MPS Equal Rights Administration Department.

61. On December 2, 2020, Saffold convened a last minute virtual "non-disciplinary supervisory meeting" with Kuether. Kuether, Wade,

Angela Ford ("Ford"), and Saffold's assistant were in attendance with Saffold.

62. On December 3, 2020, Saffold sent Kuether emails with offensive language blaming Kuether for errors that Saffold made herself as part of the assignment from Posley to clean house.

63. On December 4, 2020, Kuether submitted a discrimination and retaliation complaint against Saffold. That afternoon, Saffold issued a letter with a conflicting account of the "non-evaluative supervisory meeting," including a notice of possible termination.

64. On December 17, 2020, Saffold moved the office assignments of Kuether's direct reports without consulting or even informing Kuether.

65. On December 20, 2020, Kuether defended her dissertation. Kuether's colleagues put up celebratory signs and decorations in the office space near Kuether's office. Saffold informed staff to remove all decorations and told staff they could be written up for using MPS time and space for that purpose because of animus inspired by Posley, Holiday and Fermin.

66. On December 21, 2020, Kuether became ill at work. At the insistence of her colleagues Ford and Wade, Kuether took the afternoon off and went to a walk-in clinic. After being examined by a doctor, Kuether was taken by ambulance (due to cardiac crisis) from the walk-in clinic to the hospital, where she remained until the next day because of her physical

reaction to the Posley/Saffold discriminatory and retaliatory micromanagement.

67. In December 2020, Kuether was only present at work for six (6) days due to approved FMLA leave and the holiday work schedule.

68. On December 29, 2020, when Kuether returned to work from a hospital stay, Fermin summoned Kuether to his office to question Kuether about her "actions and behavior towards Saffold."

69. Although Posley made the decision to reassign Kuether in consultation with Fermin and others, Fermin and not Posley met with Kuether depriving her of the opportunity to respond to the charges against her to the decision maker.

70. That day, Fermin and Posley summarily and involuntarily reassigned Kuether to a non-existent "special assignment", one without defined title, role, or duties.

71. Fermin and Posley also removed Kuether and her political activism from the MPS central office by Fermin directing Kuether to clean out her office and report the next workday to Washington High School for a "special assignment" job without description.

72. Chason asked Fermin for evidence supporting the "special assignment" decision. Fermin told Chason that "a reassignment would allow Kuether to reset."

73. Posley knew or had reason to know of Kuether's expertise in early

childhood, cultivated over her three decades of service to MPS, that she holds no licensure and has no experience teaching high school.

74. Defendants Posley, Cotton, Fermin reassigned Kuether to set her up to fail, humiliate her, and injure her professionally and emotionally.

75. On information and belief, Cotton, knowing that MPS previously found Holiday discriminated in hiring, referred Kuether, Wade, and Sandrin to Fermin knowing that he would retaliate against them.

76. Cotton arranged Kuether's special assignment in the late hours of the previous night by calling Terry on her personal phone and informing Terry that she could "figure something out" for Kuether's work duties.

77. During the reassignment meeting, Kuether said two things, she told Cotton that she was not licensed for high school, Cotton told Kuether, "it doesn't matter, you go where we put you".

78. Kuether also asked Fermin, "is there anything I could have done to change this." Fermin replied, "Who knows".

79. Kuether reported to Washington High School and began a punitive work regimen under the supervision of Principal Angelena Terry ("Terry"). While other school employees worked in the office or the Fourth Floor, Defendants assigned Kuether to a basement workspace with no phone, no internet, no working computer, and no cellular service, isolating her from others.

80. Kuether's new workspace was filthy, featuring used toothbrushes on

the table, old food and opened drinks lying about, yellow liquid in a jar, mouse nests and droppings, and a large knife in the desk drawer. Conspicuous as the only room not sanitized per policy as appropriate during the COVID pandemic.

81. Terry denied Kuether leave for a previously scheduled doctor's appointment and changed the procedure for approving future appointments in attempts to make it appear that Kuether was AWOL.

82. Even though Fermin/ Posley banished Kuether, Saffold emailed Holiday and reported Kuether as "AWOL".

83. Terry video recorded Kuether without her knowledge and denied such recordings existed, falsely accused Kuether of being combative, ordered Kuether to "not move or follow her," and threatened to write her up for impossible tasks.

84. On Day 4, Kuether informed Terry that she would need to take the afternoon off due to illness. Kuether's heart condition worsened due her treatment on the "special assignment." Kuether's medical doctor ordered immediate medical care, and placed Kuether on heart medication and daily monitoring precipitating the need for FMLA.

85. On January 21, 2021, in a special Board meeting led by Chason about Kuether's complaints and arbitrary reassignment, Posley told the Board that he "directed [his] staff to reassign Debbie Kuether so that she could reset her behavior."

86. On April 13, 2021, Posley sent agents to Kuether's house to get the laptop and keys that the District had assigned to her. The District's agents told Kuether that her position had been cut per a March meeting announcement by Saffold.

87. In April 2021, upon information and belief, the District alerted Kuether that her MPS payroll had been hacked causing direct deposits and bank accounts to be compromised and frozen.

88. Chason initiated an internal investigation on Kuether's payroll hack. The District compromised Kuether's identity through its careless sharing of her personal information to multiple individuals during her "reassignment" and concluded it was more likely than not that an inside person had initiated the hack on Kuether's payroll.

89. In May 2021, MPS informed Kuether that they had a payroll oversight which made it necessary to take three months of deductions in one transaction from Kuether's leave balance which ended Kuether's health, dental, vision coverage for Kuether. The deduction impacted Kuether's retirement calculations and makes her ineligible for health, vision, and life insurance upon the end of her employment.

90. On information and belief, Posley and Fermin directed MPS employees directly or indirectly to alter Kuether's payroll because of discriminatory and retaliatory animus.

91. As a direct result of Posley and the District's actions, Kuether suffered

and continues to suffer significant physical and emotional distress.

IV.  **In early 2022, the media gave Kuether's public criticism of MPS significant publicity. In response MPS doubled down on retaliation.**

92.  On January 18, 2022, Channel Four News (TMJ4-Milwaukee) ran a story about the dispute. Shawn Gallagher, "State agency finds probable cause Milwaukee Public Schools violated hiring laws based on retaliation complaint". That story mentioned Holiday's ERD complaint: "Lastly, the I-Team found Holiday filed his own ERD complaint against the district naming Posley.  https://www.tmj4.com/news/i-team/state-agency-finds-probable-cause-milwaukee-public-schools-violated-hiring-laws-based-on-retaliation-complaint.

93.  On March 7, 2022, Channel Four News (TMJ4-Milwaukee) ran another story about the dispute. Shawn Gallagher, I-Team: MPS "work conditions are the worst they have ever been' report on retaliation shows"  https://www.tmj4.com/news/local-news/i-team-mps-work-conditions-are-the-worst-they-have-ever-been-report-on-retaliation-shows.

94.  On June 7, 2022, Channel 12 News (WISN Milwaukee) ran a story about the dispute. Gerron Jordan, "Group wants Milwaukee Public Schools superintendent fired".  The story featured images of Kuether and others carrying signs and demanding Posley's resignation.

https://www.wisn.com/article/group-wants-milwaukee-public-schools-superintendent-fired/40218889

95. On September 20, 2022, Channel Four News ran another story about the dispute. Shawn Gallagher, "Whistleblower accuses MPS of intentionally harming advancement of minority students." (Sep. 20, 2022: 6:21 AM) (https://www.tmj4.com/news/i-team/whistleblower-accuses-mps-of-intentionally-harming-advancement-of-minority-students.)

96. Media featured Kuether in many other articles some gaining statewide and national attention.

97. In response MPS blacklisted Kuether.

98. Upon information and belief, Saffold sabotaged Kuether's ability to find other employment by failing to return emails and phone calls to acknowledge Kuether's employment when prospective employers called.

99. In November of 2022, days before a hearing on whether MPS discriminated against Dr. Jose Garcia Joven ("Garcia Joven"), MPS refused to honor notices for Posley and Holiday despite a previous agreement to attend.

100. Low on resources, Garcia Joven asked Kuether to serve Holiday and Posley for his hearing as the last resort for the last-minute refusal by MPS.

101. On November 8, 2022, Kuether served Holiday for Garcia Joven's ERD hearing.

102. After opening the door, Holiday said, "Oh no, not you," and slammed the door, pinned Kuether between the door and the door frame, and pushed with his entire weight until Kuether wriggled free.

103. Holiday caused physical and emotional injuries to Kuether.

104. Milwaukee Police Department ("MPD") investigated and cited Holiday for assault and battery. His trial is scheduled for June 18, 2024.

## V. Defendants Curtail Kuether's Protected Speech in Designated Public Forums

105. During Spring 2023, Kuether appeared at Board meetings which she encouraged others, including media, to attend. She attended these meetings carrying protest signs (in accordance with policy), sat next to parents and MPS employees, and provided democratic criticism before the Board. See also "Group wants Milwaukee Public Schools superintendent fired" above.

106. In response, the Board changed official rules, policies, and customs related to Board Meetings, or set them aside entirely, to target and restrict Kuether from exercising public speech.

107. Defendants admonished Kuether for holding a sign that complied with all applicable rules of decorum, increased security detail at Board meetings and ordered security detail to give a special sign upon confirming Kuether's attendance to enact special security protocols and

use additional resources to stifle Kuether.

108. The Board, Posley, and Mann also packed meetings with senior administration to keep tabs on, to intimidate Kuether and others from expressing contrary viewpoints and political affiliations at those Meetings, and to convey public support for the MPS administration.

109. During a May 21, 2023 Board meeting, Peterson while president shut down discussion including Kuether's public testimony, went into recess, and closed session for the purpose of blocking discussion because Kuether exercised her free speech rights in a public forum. Peterson stated that Kuether had disrupted the Board's "orderly process".

110. Kuether's conduct was not disorderly. By contrast, other members of the public who were present at the meeting were allowed to use curse words during their time to speak.

111. Peterson, Herndon and other board members singled Kuether out giving other speakers two minutes and fifteen seconds to present their viewpoints.

112. On March 17, 2022, Kuether registered, per MPS policy, to provide virtual testimony at the Board meeting. Upon information and belief, to prevent Kuether from providing testimony, Defendants MPS and Board intentionally failed to provide Kuether with the access link until after the meeting concluded, depriving her of the right to provide comment at the forum.

113.  On May 5, 2022, Kuether registered, per MPS policy, to provide virtual testimony at a Board meeting. Defendants Gokalgandhi and Mann turned off Kuether's microphone forty-five (45) seconds into the allotted two-minute and fifteen seconds time allotment, preventing a speaker they harbored animus toward from making further speech solely because they found it disagreeable. In so doing, Defendants interfered with and violated Kuether's right to make speech at a public forum.

114.  While Gokalghandi and Mann claimed that Kuether was "off topic," she discussed proficiency rates and budget and generally echoed the same sentiment that the two previous speakers did in their testimony. The previous speakers were not cut off. After Gokalghandi and Mann removed Kuether from the meeting, she resorted to submitting her written statement via email to the Board.

115.  On July 28, 2022, Kuether registered to speak virtually at the Board meeting.to discuss the superintendent's recommendation to place former chief Marla Bronaugh into a newly created Director of Remote Work position.

116.  Kuether attended the Board meeting virtually because meetings were not yet in-person. Peterson and Mann allowed a speaker to speak who "pledge to support the new [principal]". Mann started the timer early for Kuether.

117.  After Kuether said "this is yet another example of the superintendent

abusing his power and providing a different standard of treatment for a particular person." Mann and Peterson discussed cutting Kuether's testimony and then did so.

See @2:30:20 https://www.youtube.com/watch?v=Au9Za31KCtM.

118. On March 28, 2023, Kuether and other members of the public invited the press to attend the public Board of School Directors meeting. Kuether gave public testimony. To prevent Kuether and others from speaking, especially with the media present, the Directors abruptly moved their meeting into closed session and removed the public from the auditorium.

119. On June 22, 2023, Kuether waited two and a half hours for the chance to be the only person giving two minutes and fifteen seconds of oral testimony to the School Board on the MPS budget. During her testimony, Board director O'Halloran, told her she was "off topic," spoke over Kuether telling her that her "time has expired" despite her timer still showing speaking time remaining. The Board turned off Kuether's microphone.

120. On October 19, 2023, Kuether registered to provide testimony in accordance with policy. Kuether was speaking in support of the anti-bullying policy and referenced violence in MPS central services against female employees. Another female employee, Angela Harris testified about an attack she experienced from a parent and was not cut off.

121. President Herndon interrupted and spoke over Kuether's testimony, and eventually turned off Kuether's mic prior to the expiration of her allotted time.

See @16:53 https://www.youtube.com/watch?v=f8vn3P2vKxg.

122. On December 18, 2023, an MPS employee contacted Kuether through her personal social media in response to Kuether's comment on the official MPS Facebook page, "Children need to be the priority and not high paid administrators! The mission of public education should be the focus".

123. On information and belief under the direction from Posley, the MPS employee messaged Kuether that no other "political statements" should be made on MPS Facebook posts or Kuether would face legal ramifications.

124. In August 2023, MPS terminated Kuether's employment while she was on leave. Kuether's termination was not customary or in accordance with precedence or practice and violated Kuether's due process. MPS never processed Kuether's wrongful termination grievance.

125. On August 24, 2023, Kuether was the lone speaker and waited for ninety (90) minutes to speak for her allotted 2:15 minutes. The board received and acknowledged Kuether's speaker slip. During the testimony portion, Mann ignored Kuether and forced Kuether to interrupt the board to ask if she could speak in accordance with policy.

126. Carr promoted a January 15, 2024 Facebook Live public meeting in which she discussed matters of public concern in her role as School Board Director.

127. Although Carr promoted the event as open to the public, Carr hosted the event on using her personal Facebook profile and refused entry to Kuether.

128. Carr told third parties that if Kuether is present at community events she will cancel the event. Kuether did not attend a March 23, 2024 public event co-hosted by Carr because of Carr's statements.

129. Upon information and belief, Posley, Fermin, Holiday, Mann, Peterson, Herndon, O'Halloran, Gokalgandhi, Carr, and Herndon told employees, parents, and members of the public not to associate with Kuether. Employees, parents, and members of the public told Kuether that they are afraid to associate with her because of retaliation from Posley, Fermin, Holiday, Mann, Peterson, Herndon, O'Halloran, Gokalgandhi, Carr and Herndon.

VI. **Board Directors and Posley acting as custodians of public records retaliate against Kuether.**

130. Wisconsin Law entrusts public records to custodians and elected political officials are custodians of those public records.

131. Kuether requested public records from the Board through Mann, from the District through Chason, and from individual Board directors directly to the Directors including Peterson, Herndon, O'Halloran,

Gokalgandhi, Carr and Herndon.

132. For example, in March 2022, Kuether made an open records request for settlements associated with MPS and the Board. MPS took seventeen (17) months to respond to the request and withheld documents (such as the Bowling settlement).

133. Another open records request made in March 2022 by Kuether to MPS and the Board was regarding expenditure on legal services.

134. MPS and the Board did not respond to the request until September 29, 2023, some eighteen (18) months after the original request. MPS response was significantly delayed and only partially fulfilled.

135. Mann, Posley, and individual Board Directors including Peterson, Herndon, O'Halloran, Gokalgandhi, Carr, and Herndon refused to produce or unreasonably delayed the production of public records in response to Kuether's requests.

## CLAIMS FOR RELIEF

### Count I: Discrimination Based on Political Association in Violation of the First Amendment, 42 U.S.C. § 1983
*Against Defendants MPS, Board, Posley, Fermin, Cotton, & Holiday*

136. Plaintiff realleges and incorporates by reference all previous allegations.

137. The First Amendment to the United States Constitution ensures government employees like Kuether the right to associate for the

purpose of engaging in constitutionally protected activities, including speech, assembly, exercise of religion, and the petition for redress of grievances.

138. As set forth above, Plaintiff engaged in conduct that was constitutionally protected, suffered a deprivation of liberty likely to deter free speech, and a causal connection exists between her protected conduct and/or political non-affiliation with the Board and the adverse actions imposed by the Board.

139. In violation of Kuether's First Amendment rights and 42. U.S.C. § 1983, Defendants MPS, Board, Posley, Fermin, Cotton and Holiday threatened to discharge, subjected Kuether to discriminatory terms and conditions, and constructively discharged Kuether because of Kuether's (1) political affiliation with MTEA, MTEA President Mizialko, and the employees who wrote the petitions that Mizialko presented to the Board as a collective, which objecting to the elected Board's decision to promote Holiday to Chief Academic Officer; and (2) political non-affiliation with the current Board.

140. Defendant Posley acted under the color of state law when he arbitrarily reassigned Plaintiff to Washington High School for a punitive assignment, in violation of the First Amendment to the United States Constitution.

141. Through their acts above, Defendants Posley and Holiday knowingly,

willfully, or at least recklessly caused violation of Kuether's rights under the First Amendment and 42 U.S.C. § 1983.

142. Posley and Fermin were personally involved in the discriminatory and retaliatory conduct that Terry and Holiday levied at Kuether, designing the special assignment at Washington High School and dismissing Kuether's complaints in favor of protecting Holiday.

143. Defendants were aware of Plaintiff's political affiliation and non-affiliation and took adverse employment actions based on it.

144. Defendants, and each of them, possessed and exercised the authority to make final policy decisions on behalf of MPS and the Board.

145. Defendants, and each of them, treated Plaintiff in accordance with an official custom, policy, or practice that was designed to punish and silence Kuether for her political affiliation and protected speech that criticized the current, elected Board administrators and their hiring practices.

146. Plaintiff suffered injuries as a result of an official custom, policy, or practice of MPS, the Board, and Posley.

### Count II: Unlawful Infringement on Speech
**Violation of 42 U.S.C. § 1983 / First Amendment**
*Against Defendants the Board, Peterson,*
*O'Halloran, Gokalgandhi, Carr, and Herndon.*

147. Plaintiff realleges and incorporates by reference all previous allegations of fact.

148. As set forth above, Defendant the Board maintained an unlawful official policy, practice, or custom of intentionally restricting Plaintiff's access to designated public forums and curtailing her speech within the same public forums, and said policy was the moving force behind Defendants violation of Plaintiff's constitutional rights.

149. Defendants Peterson, Herndon, O'Halloran, Gokalgandhi, Carr, and Herndon, in accordance with the Board's official unlawful policy, intentionally and/or recklessly participated in the violation of Plaintiff's constitutional rights.

150. Defendants' infringement upon Plaintiff's constitutionally protected speech and anticipated speech was motivated by the content, viewpoint, and message of the same, in violation of the First Amendment. The Majority singled out and punished Plaintiff based on speech it found offensive, and such treatment is likely to deter others from exercising public speech, especially unpopular speech.

### Count III: *Loudermill* Violation
### Violation of 42 U.S.C. § 1983/Due Process Clause of the Fifth Amendment
*Against Defendants Posley, Fermin and Cotton*

151. Plaintiff incorporates by reference all preceding allegations of fact.

152. Defendants constructively discharged from her public employment based in part on the charges from Saffold.

153. Posley made the decision to constructively discharge Kuether in consultation with Fermin and others.

154. Posley, Fermin, and Cotton, acting under the color of law conspired to deprive Kuether of her constitutional rights.

155. To wit, Posley, Fermin, and Cotton failed to give Kuether an (1) oral or written notice of the charges, (2) an explanation of MPS' evidence, and (3) an opportunity to tell her side of the story.

156. Posley refused to act on Kuether's termination grievance.

157. As a direct result of the Defendants' actions, Kuether suffered damages.


## Count IV:  Sex-Based Discrimination (Disparate Treatment) in Violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e-2(a)

*Against Defendant MPS*

Plaintiff incorporates by reference all preceding allegations of fact.

Plaintiff is a member of protected classes: White and White female.

Similarly situated employees who were not White and Female were treated more favorably than Plaintiff by MPS.

Plaintiff's race and sex was a substantial motivating factor in MPS's decision to modify Plaintiff's employment terms and to constructively terminate her.

By evaluating and constructively terminating Plaintiff's employment, based on prohibited stereotypes about the proper role and behavior of White persons, and/or White Females or employees in general and as a whole, MPS violated Title VII.

MPS violated Plaintiff's right to be free from discrimination in the terms and

conditions of her employment on the basis of her race and sex as guaranteed by Title VII of the Civil Rights Act of 1964. It failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate race and sex discrimination from the workplace and to prevent it from occurring in the future, causing Kuether to suffer even greater harm.

As a direct and proximate result of MPS's discriminatory conduct as described herein, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries and damages, including, but not limited to, lost past and future income and benefits, and compensation for emotional pain and suffering, harm to reputation, and mental anguish, to an extent and in an amount to be proven at trial.

## Count V: Retaliation in Violation of Title VII, 42 U.S.C. § 2000e3

*Against Defendant MPS*

158. Plaintiff realleges and incorporates by reference all previous allegations.

159. As set forth above, Kuether opposed discrimination in the workplace and assisted co-workers in assisting discrimination in the workplace. Accordingly, Plaintiff engaged in activities protected by Title VII's anti-retaliation provision, 42 U.S.C. § 2000e3.

160. In violation of 42 U.S.C. § 2000e3, Defendants subjected Plaintiff to discriminatory terms and conditions of employment and constructively discharged her because she engaged in activities protected by Title VII.

161. As a direct and proximate result of MPS's retaliation against Kuether,

Kuether has suffered and will continue to suffer damages including loss of wages, reputational and career losses, pain and suffering, and emotional distress.

## Count VI:  Discrimination in Violation of the Equal Protection Clause
## of the Fourteenth Amendment, 42 U.S.C. § 1983

*Against Defendants Posley, Fermin, and Holiday*

162.  As set forth herein, Defendant Posley, Fermin, and Holiday, acting under color of state law, discriminated against Plaintiff because of her race and sex, without a rational basis for doing so, in violation of the rights secured to him by the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

## Count VII:  Violation of Wisconsin Public Records Law Wis. Stat. §19.31 et seq.

*Against Defendants Mann, Posley, Peterson, O'Halloran, Gokalgandhi, Carr, and Herndon*

163.  Plaintiff incorporates by reference all preceding allegations of fact.

164.  Kuether made valid records requests of the Defendants Board (Mann), Posley, Peterson, Herndon, O'Halloran, Gokalgandhi, Carr, and Herndon.

165.  Defendants either failed to respond or unreasonably delayed the production of public records without giving a reason.

166.  Defendants either failed to respond or unreasonably delayed the production of public records because of Kuether's public activism.

167. Defendant's actions in failing to produce or delaying production of records requested by Kuether including her personnel file have caused and will continue to cause injury to Kuether; its actions also continue to deprive the public of its rights under the Public Records Law.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff Deborah Kuether respectfully requests that the Court enter Judgment in her favor and against Defendants, as follows:

1. Order Defendant MPS to make Plaintiff whole by providing back- pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful practices.

2. Order Defendant MPS to make Plaintiff whole by providing compensation for past and future pecuniary losses, emotional and punitive damages, including out of pocket costs resulting from the unlawful practices described above, in amounts to be determined at trial.

3. Order Defendant MPS to reinstate Plaintiff to her prior position and seniority level, or, in the alternative, awarding Plaintiff front pay.

4. Order granting injunctive relief against the Defendants to prevent further violations.

5. Order Defendants to pay Plaintiff her reasonable attorneys' fees and costs incurred because of bringing this action,

6. Order defendants to pay punitive damages.

7. Order defendants to produce the requested records.

8. Grant Plaintiff any further and additional relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby requests jury trial of all issues triable by a jury.

Dated this 1st day of April 2024.

**Cross Law Firm, S.C.**

Attorneys for Plaintiff
Deborah Kuether

By: s/Ben Hitchcock Cross
Ben Hitchcock Cross
WI Bar Number: 1066395

Lawyer's Building
845 North 11th Street
Milwaukee, WI 53233
Phone: (414) 224-0000
Fax: (414) 273-7055
Email: bchc@crosslawfirm.com