UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**DEBORAH KUETHER,**

**Plaintiff,**

**v.** **Case No. 23-CV-948**

**KEITH P. POSLEY, et al.,**

**Defendants.**

---

## DECISION AND ORDER

---

### 1. Procedural History

Plaintiff Deborah Kuether brings First Amendment, due process, discrimination, and retaliation claims against the Milwaukee Board of School Directors (hereinafter the "School Board") and various persons in their individual capacities. (ECF No. 37 (operative, second amended complaint).) The court previously granted in part the defendants' motion to dismiss the second amended complaint, resulting in the dismissal of Kuether's open records claim and her official capacity claims. (ECF No. 46.)

Three motions for summary judgment are now pending, filed by the individual defendants (ECF No. 155), the School Board (ECF No. 163), and the plaintiff (ECF No. 166). All parties have consented to the full jurisdiction of this court pursuant to 28

U.S.C. § 636(c). (ECF Nos. 27, 28.) The court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). The motions are fully briefed and ready for resolution.[1]

**2. Facts**

The parties dispute the vast majority of each other's proposed findings of facts.[2] The court has attempted to distill the undisputed facts into a brief summary, taken largely from the defendants' proposed findings of fact (ECF No. 157), pursuant to Kuether's response thereto (ECF No. 196). Additional facts will be discussed throughout this decision as relevant.

Kuether's employment with the Milwaukee Public Schools ("MPS") began in January 1995. (ECF No. 196, ¶ 8.) Throughout the time relevant to this lawsuit, up until approximately January 2021, she worked as a Literacy Education Manager II in the Curriculum and Instruction Department. (*Id.*, ¶ 9.) During a vacancy of unspecified duration, defendant Jeremiah Holiday supervised the department. (*Id.*) Felicia Saffold was hired and became Kuether's supervisor on October 19, 2020. (*Id.*)

[1] Kuether filed a "corrected" brief (ECF No. 175) in support of her motion for summary judgment six weeks after filing her original summary judgment brief (ECF No. 167). She offers no reason or authority for the "corrected" filing. Although the changes appear to be minimal, the court will reference the original brief (ECF No. 167).

[2] Although many of Kuether's responses to the defendants' proposed findings of fact state that the fact is "disputed," her responses often do not suggest a genuine dispute of the proposed fact. Her purported disputes are often unrelated to the proposed fact, seek only to add detail, or assert a legal conclusion. (*E.g.*, ECF No. 196, ¶¶ 1, 3, 20, 26, 28–29, 51, 57, 78.) Accordingly, Kuether "fails to properly address [the defendants'] assertion of fact as required by Rule 56(c)," and "the court may…consider the fact undisputed for purposes of the motion." *See* Fed. R. Civ. P. 56(e). To the extent that the court recounts any such "disputed" facts as, in fact, undisputed, it reflects the court's conclusion that Kuether failed to demonstrate that the proposed finding of fact is "genuinely disputed." *See* Fed. R. Civ. P. 56(c)(1)(B).

During the time relevant to this lawsuit, defendant Keith Posley served as the Superintendent of MPS. (ECF No. 196, ¶ 1.) Defendant Calvin Fermin served as the Deputy Superintendent of MPS. (*Id.*, ¶ 2.) Defendant Katrice Cotton served as the Chief of School Administration. (*Id.*, ¶ 3.) Defendant Jeremiah Holiday served as the Interim Chief Academic Officer. (*Id.*, ¶ 4.) Defendants Robert Peterson, Megan O'Halloran, Marva Herndon, Jilly Gokalgandhi, and Aisha Carr all served as directors of the Milwaukee Board of School Directors. (*Id.*, ¶ 5.)

On November 21, 2019, the School Board considered and declined to appoint defendant Holiday to the permanent position of Chief Academic Officer. (ECF No. 196, ¶ 22.) The defendants contend the decision came after the School Board was made aware of performance concerns through anonymous complaints. (*Id.*) Kuether contends that the "anonymous" complaints included her own signed (not anonymous) complaint, dated November 20, 2019, which underlies her alleged protected activity and Title VII claims in this case. (*Id.*) Kuether further contends that she assisted the Milwaukee Teachers' Education Association (hereinafter, the "Teachers Union") in compiling anonymous complaints about Holiday. (ECF No. 201, ¶¶ 2, 9.)

On October 6, 2020, Deputy Superintendent Fermin met in person with Kuether and her colleagues Michelle Wade and Rochelle Sandrin. (ECF No. 196, ¶ 28.) During the meeting, Kuether, Wade, and Sandrin presented Fermin with a written complaint against Holiday and with supporting documents, which included the 2019 anonymous

complaints opposing Holiday's permanent appointment to the position of Chief Academic Officer. (*Id.*, ¶ 29.) Kuether characterizes the meeting and associated documents as concerning sex discrimination, discrimination related to the Family and Medical Leave Act ("FMLA"), and retaliation. (*Id.*, ¶¶ 28–29.) The defendants characterize the complaint as raising issues with Holiday's leadership and management style. (*Id.*, ¶ 30.)

On or around November 18, 2020, Kuether submitted a complaint of bullying, harassment, and discrimination against Holiday to Yashica Spears, who was a compliance specialist in the MPS human resources department. (ECF No. 196, ¶¶ 20, 39; *see also* ECF No. 201, ¶ 47 (referencing a complaint date of November 20, 2020).) The parties dispute whether the complaint alleged race-based discrimination. (ECF No. 196, ¶ 39.)

On January 4, 2021, Kuether was administratively reassigned to the position of Administrator on Special Assignment at Washington High School.[3] (ECF No. 196, ¶ 9.) Kuether contends that the term "administratively assigned" obscures the retaliatory nature of the reassignment. (*Id.*)

After her assignment to Washington High School, Kuether went on extended medical leave. (ECF No. 196, ¶ 13.) She argues that her extended medical leave was caused by retaliatory and hostile conditions at Washington High School. (*Id.*) The

[3] Elsewhere in the record the parties indicate that Kuether was transferred to Washington High School on December 29, 2020. (ECF No. 196, ¶ 66; ECF No. 201, ¶ 67.)

defendants claim that Kuether failed to timely request a leave extension, which caused her to be absent without leave ("AWOL") and eventually resulted in her termination for job abandonment on August 10, 2023. (*Id.*, ¶¶ 13–15.) Kuether contends that this framing ignores that her circumstances were caused by the defendants' retaliatory conduct. (*Id.*, ¶ 14.)

**3. Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable factfinder could return a verdict for the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

"The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: a court construes facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Cook v. Greenwood Hosp. Mgmt., LLC*, 704 F. Supp. 3d 874, 877 (E.D. Wis. 2023) (citing *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017)). Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

"The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and [in] opposition to the motion for summary judgment." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016).

## 4. Analysis

### 4.1. First Amendment – Political Association

Kuether alleges in her second amended complaint that defendants Posley, Fermin, Cotton, Holiday, and the School Board discriminated against her based on political association in violation of the First Amendment, made actionable under 42 U.S.C. § 1983. (ECF No. 37, ¶¶ 136–146.) The individual defendants and the School Board, but not Kuether, move for summary judgment on this claim. (ECF No. 156 at 13–20; ECF No. 164 at 9–11; *see also* ECF No. 167 (making no mention of "political association").)

#### 4.1(a) Individual Defendants

The individual defendants characterize count one as a claim of First Amendment retaliation based on political affiliation. (ECF No. 156 at 14.) Kuether "generally agrees with and accepts" the defendants' construction of the law as to the prima facie case for First Amendment retaliation. (ECF No. 194 at 17.) She does not disagree with their characterization of count one as a claim for retaliation rather than discrimination. (*See generally id.*; *see also* ECF No. 37, ¶ 142 (alleging that "Posley and Fermin were personally involved in the discriminatory *and retaliatory* conduct…") (emphasis added).)

"To establish a First Amendment retaliation claim, the plaintiff must establish that [she] engaged in protected First Amendment activity, suffered a deprivation that would likely deter future First Amendment activity, and the First Amendment activity was a motivating factor in the defendant's decision to take the retaliatory action." *Walker v.*

*Groot*, 867 F.3d 799, 803 (7th Cir. 2017). If a plaintiff makes this prima facie showing, the defendants "may rebut that evidence by demonstrating that they would have taken the same action even if the protected conduct had not occurred." *Bisluk v. Hamer*, 800 F.3d 928, 934 (7th Cir. 2015).

Kuether alleges in her second amended complaint that defendants Posley, Fermin, Cotton, Holiday, and the School Board threatened to discharge her, subjected her to discriminatory terms and conditions, and constructively discharged her because of her "(1) political affiliation with [the Teachers Union], [Teachers Union] President Mizialko, and the employees who wrote the petitions that Mizialko presented to the Board as a collective, which object[ed] to the elected Board's decision to promote Holiday to Chief Academic Officer; and (2) political non-affiliation with the current Board." (ECF No. 37, ¶ 139.)

The individual defendants argue that Kuether cannot establish that she was engaged in a constitutionally protected activity because there is no evidence that Kuether affiliated herself with a particular politician or political party. (ECF No. 156 at 14–15 (citing *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004)).) Although the case they cite for this requirement involved activity in a particular political party, it did not address the question of whether affiliation with a particular politician or party is necessary. *See Hall*, 389 F.3d at 762.

"In this circuit, a public employee is protected from adverse employment consequences based on the exercise of the right to freedom of association … when the associational conduct relates to a matter of public concern." *Klug v. Chicago Sch. Reform Bd. of Trs.*, 197 F.3d 853, 857 (7th Cir. 1999). Kuether argues that "[c]ompiling complaints against Holiday for the [Teachers Union] is protected because [she] compiled information to support the [Teachers Union's] petition for redress of grievances on a matter of public concern, namely Wisconsin's public schools." (ECF No. 194 at 21.)

The individual defendants challenge Kuether's contention that she was responsible for collecting the anonymous complaints for the Teachers Union. (ECF No. 156 at 17 n.2.) Kuether indeed fails to offer any evidence that she assisted the Teachers Union with compiling the complaints. (*See* ECF No. 194 at 21–22 (failing to cite any evidence in support of this contention in her response brief); ECF No. 201, ¶¶ 2, 9–10 (citing evidence about Kuether being a complainant but revealing no indication that she compiled the complaints); ECF No. 153-12 (reflecting an email communication from Kuether to the president of the Teachers Union, dated January 6, 2021—after Kuether's reassignment and well after the Teachers Union brought the complaints to light).)

However, the individual defendants acknowledge that Kuether participated in "reiterating" the "anonymous [Teachers Union] complaints" during a meeting with Fermin on October 6, 2020. (ECF No. 156 at 17; *see also* ECF No. 194 at 22 (Kuether's response arguing that her bringing the Teachers Union complaints to Fermin was also

evidence of her protected activity/associational conduct).) Construing these circumstances in a light most favorable to Kuether, this activity could constitute conduct associated with the Teachers Union.

The individual defendants do not attempt to rebut Kuether's argument that her associational conduct related to a matter of public concern. (*See* ECF No. 200 at 3–4.) Instead, they contend that the public concern analysis is inapplicable in the freedom of association context. (*Id.*) But they do not address the Seventh Circuit precedent applying the public concern analysis to a freedom of association claim. *See Klug*, 197 F.3d at 857. Accordingly, the individual defendants have failed to establish that Kuether was not exercising her right to freedom of association based on a matter of public concern.

The individual defendants also assert that Kuether was not engaged in the alleged protected activity in her capacity as a private citizen. (ECF No. 200 at 4 (citing ECF No. 189 at 22–25).) "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). They contend that Kuether acted as an employee, not a private citizen, because she raised concerns about misconduct affecting an area within her responsibility as an employee. (ECF No. 189 at 23.) The defendants contend that the entirety of the anonymous complaints that Kuether allegedly assisted in compiling "solely address Dr. Holiday's shortcomings as a supervisor and in the

execution of his duties as the Chief Academic Officer." (*Id.* at 24 (citing ECF No. 157, ¶ 23).) They point out that Holiday directly or indirectly supervised Kuether throughout the relevant time. (*Id.*; *see also* ECF No. 196, ¶ 21.) But they do not explain how the fact that Holiday was Kuether's supervisor necessarily means that her association with the Teachers Union about Holiday's misconduct was activity pursuant to her "official duties" rather than as a concerned citizen. *See Garcetti*, 547 U.S. at 421 (holding that the First Amendment protects some expressions related to a public employee's job but that the critical factor is whether the expression was made pursuant to the employee's official duties).

The individual defendants further contend that this claim must fail because Posley was the "undisputed decisionmaker" regarding Kuether's reassignment to Washington High School and Kuether cannot show that he knew of her affiliation or activity when he reassigned her. (ECF No. 200 at 4.) However, defendant Fermin testified during his deposition that he made Posley aware of the complaints that Kuether made against Holiday—likely in October 2020[4] when Fermin was reviewing the documents that Kuether provided. (ECF No. 162-2 at 187:2–17.)

[4] The court infers the year was 2020 because Fermin stated the communication with Posley occurred "in October when I was reviewing the documents that she provided." (ECF No. 162-2 at 187:14–15.) As recounted in the factual summary, Kuether met with Fermin on October 6, 2020, to provide a written complaint and supporting documents. (ECF No. 196, ¶ 28.)

The individual defendants further argue that Holiday cannot be held individually liable because he did not participate in Kuether's administrative reassignment. (ECF No. 156 at 19.) But Kuether's claim in count one extends beyond reassignment. She alleges that the defendants named in count one threatened to discharge her, subjected her to discriminatory terms and conditions, and constructively discharged her. (ECF No. 37, ¶ 139.) The fact that Holiday may not have participated in Kuether's administrative reassignment does not mean he cannot be held personally liable for any of the other conduct alleged in count one.

The individual defendants also contend that they are entitled to qualified immunity on count one. (ECF No. 156 at 19–20.) They summarily support this contention with the allegation that Kuether lacks a cognizable claim of a constitutional injury. (*Id.* at 20.) The court deems this argument undeveloped and thereby waived.

The individual defendants also argue for the first time in their reply brief that Kuether's reassignment cannot constitute a deprivation that would likely deter future First Amendment activity. (ECF No. 200 at 5–6.) But arguments newly raised in a reply brief are waived. *See Est. of Smith by Haynes v. City of Milwaukee*, 410 F. Supp. 3d 1066, 1076 (E.D. Wis. 2019) ("[N]ew arguments cannot be raised in a reply brief.") (citations omitted).

The individual defendants have failed to demonstrate that Kuether cannot necessarily establish a First Amendment freedom of association claim under count one. Therefore, the court will deny their motion for summary judgment in this respect.

**4.1(b) School Board**

The defendant School Board argues that Kuether cannot succeed against it on count one because Kuether presents no evidence that the School Board has a custom, policy, or practice of sanctioning retaliation in violation of the First Amendment. (ECF No. 164 at 10.) A local government entity can only be held liable "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible for under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); (*see also* ECF No. 37, ¶ 145 (contending in her second amended complaint that the defendants treated Kuether "in accordance with an official custom, policy, or practice")).

Kuether argues that a jury could reasonably infer that the School Board's decision to reassign her "formed a municipal policy, custom, or practice targeting [her] for discrimination and retaliation." (ECF No. 195 at 31.) However, even if the School Board's actions constituted retaliation against Kuether in violation of the First Amendment, misconduct against her alone would be insufficient to establish a custom, policy, or practice. *See Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009) (finding that, "although Valentino presents evidence of possible retaliation against others, she does not show how these separate incidents weave together into a cognizable Village policy"). Because Kuether does not argue that any additional actions weave together to

form a policy, custom, or practice, her First Amendment claim against the School Board for retaliation must fail.

The court will grant the defendant School Board's motion for summary judgment with respect to Kuether's claim for First Amendment retaliation based on political association.

**4.2. First Amendment – Infringement on Speech**

Kuether alleges in her second amended complaint that defendants Peterson, O'Halloran, Gokalgandhi, Carr, Herndon, and the School Board unlawfully infringed on her right to free speech in violation of the First Amendment, made actionable under 42 U.S.C. § 1983. (ECF No. 37, ¶¶ 147–150.) She claims that the School Board "maintained an unlawful official policy, practice, or custom of intentionally restricting [her] access to designated public forums and curtailing her speech within the same public forums." (*Id.*, ¶ 148.) She further alleges that the individual defendants "intentionally and/or recklessly participated in the violation of [her] constitutional rights." (*Id.*) All parties have moved for summary judgment on this speech infringement claim. (ECF Nos. 156 at 20–24; 164 at 11–12; 167 at 29–32.)

"The First Amendment permits government to regulate use of its property in certain instances depending on the nature of that property." *Surita v. Hyde*, 665 F.3d 860, 869 (7th Cir. 2011). The parties agree that open government meetings, including the school board meetings in question, constitute "limited" public forums for purposes of

First Amendment analysis. (*See* ECF Nos. 156 at 22; 167 at 22); *see also Ayres v. City of Chi.*, 966 F. Supp. 701, 711–12 (N.D. Ill. 1997) ("Examples of limited public fora include … school board meetings."). "When the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech. The State may be justified 'in reserving [its forum] for certain groups or for the discussion of certain topics.'" *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106 (2001) (alteration in original) (citation omitted). However, any "restriction must not discriminate against speech on the basis of viewpoint, and the restriction must be 'reasonable in light of the purpose served by the forum.'" *Id.* (internal citations omitted).

The School Board and individual defendants argue that the restrictions on the public comment portions of the School Board's meetings pass constitutional muster both facially and as applied to Kuether. (ECF No. 156 at 20–23; ECF No. 164 at 12 n.2 (School Board's brief incorporating the arguments advanced by the individual defendants on this claim).) Kuether argues that the School Board did not impose any restrictions on subject matter when it invited the public to speak at its meetings and that she was not violating the School Board's restrictions on public comment (such as being off topic or over time) when the defendants cut her off because they disfavored the viewpoints embodied in her speech. (ECF No. 167 at 29–32.)

### 4.2(a) Facial Constitutionality

The defendants submit that the School Board limits public comment "to those items noticed for public comment, enforces rules of decorum, requires speakers to register for comment, and limits the length of comment." (ECF No. 156 at 22.) In support of these limitations, the defendants provide a declaration from Jillain Kawala, who is an Assistant Board Clerk for the Office of Board Governance for the School Board responsible for advising the School Board on matters related to parliamentary procedure, Wisconsin Open Meetings laws, and application of the School Board's rules. (*Id.* (citing ECF No. 157, ¶¶ 90–99); *see also* ECF No. 160, ¶¶ 2–3 (Kawala's declaration).)

Kuether challenges the defendants' proposed findings of facts that rely on Kawala's declaration. (ECF No. 196, ¶¶ 90–91, 95–99.) Kuether argues that Kawala's declaration is improper opinion evidence because it "seeks to advance a conclusion of law as to whether the time, place, and manner restrictions [the School Board] imposes upon its meetings are reasonable." (*Id.*, ¶¶ 96–97.) But Kawala's declaration and the proposed findings of fact merely reflect the meeting limitations described above—for example, that speakers are limited to commenting on items on the agenda and restricted to two minutes per speaker with an additional thirty seconds to wrap up. (*See id.*) Neither the proposed findings of fact nor Kawala's declaration purport to advance a legal conclusion about the "reasonableness" of those conditions. The court finds Kuether's

challenges without merit and, in any event, it is not the defendants' burden to prove the existence of policies, practices, or customs that Kuether challenges.

Kuether acknowledges the School Board's "off-topic" rule, which limits commentary to items noticed for public comment, but argues it is unlawful because it is neither reasonable and neutral nor was it reasonably and neutrally applied. (ECF No. 167 at 30.) She further contends that the School Board "published no objective workable standards" regarding what was on or off topic. (ECF Nos. 167 at 32; 194 at 27.) She contends that, "if a restriction on speech is so broad as to allow state actors to restrict speech based on its message, e.g., provides for the suppression of 'off-topic' speech without 'objective, workable standards' for what is and is not on-topic, it is not 'viewpoint-neutral.'" (ECF No. 194 at 19 (citing *Krasno v. Mnookin*, 148 F.4th 465, 483 (7th Cir. 2025)); ECF No. 167 at 22 (same).)

The defendants contend that Kuether misapplies the holding in *Krasno* because that case involved a situation where "administrators could delete virtually any [social media] post by characterizing it as off-topic, with no objective benchmark against which to measure that judgment." (ECF No. 200 at 8.)

The Seventh Circuit determined in *Krasno* that the comment threads attached to a university's social media posts were limited public forums and found the university's "off-topic rule" for those comment threads unreasonable and therefore unconstitutional. *Krasno*, 148 F.4th at 484–85. To assess reasonableness, the Seventh Circuit first considered

the university's justifications for its off-topic rule. *Id.* at 485. It found the university's objective—keeping comment threads unclogged and facilitating the university's response to questions and comments—to be permissible. *Id.* However, the court determined that the university "neither clarified what it means to be 'off-topic' nor provided 'objective, workable standards' to guide its social media managers' discretion." *Id.* The university also employed a context-blind keyword filter that did not reasonably further its off-topic justification and even resulted in admittedly on-topic comments being hidden. *Id.* at 486. The court observed that the university "'must be able to articulate some sensible basis for distinguishing what may come in from what must stay out' of its comment threads." *Id.* at 485 (quoting *Minnesota Voters All. v. Mansky*, 585 U.S. 1, 16 (2018)).

The defendants contend that the limitations on public comment are necessary for the School Board "to conduct its business in a reasonably efficient manner." (ECF No. 156 at 22; *see also* ECF No. 196, ¶ 95.[5]) Kuether does not challenge this justification (*see* ECF No. 194 at 27), and the court agrees that it is permissible on its face. Kuether identifies

[5] The defendants' proposed finding of fact states that the School Board's public comment rules "are necessary to ensure that [the School Board] is able to accomplish its business in reasonably efficient manner." (ECF No. 196, ¶ 95.) Kuether disputes this fact on the basis that it is improper opinion evidence because it "seeks to advance a conclusion of law as to whether the time, place, and manner restrictions [the School Board] imposes upon its meetings are reasonable." *Id.* But, once again, neither the proposed findings of fact nor the declaration to which the School Board cites purport to advance a legal conclusion about the "reasonableness" of the School Board's public comment rules; they offer a justification for instituting those rules, and Kuether does not offer any counter argument about the veracity of the justification.

only the off-topic rule in reference to her argument about a lack of objective workable standards. (*See* ECF No. 194 at 27.)

However, Kuether recognized in her proposed findings of fact that the School Board has provided information and guidelines on how to comment during its meetings; she even cited two documents reflecting that comments must pertain to the meeting agenda for that particular meeting of the School Board. (*See* ECF No. 165, ¶ 78 (citing ECF No. 161-12 (stating, "Testimony will only be accepted for items on the meeting's agenda. (There is no 'general comment' period)."); ECF No. 161-13 ("Guidelines for Giving Testimony," directing meeting attendees how to proceed "[i]f you wish to speak to or to express your position on an item on the agenda…").) Because Kuether submits evidence that the School Board *did* have a policy of restricting public comment based on its relationship to the meeting agenda, her assertion that the School Board "did not impose any restrictions on subject matter" when it invited the public to speak at its meetings is factually inaccurate. (ECF No. 167 at 29.)

Kuether offers no explanation as to why a meeting agenda provided by the School Board could not serve as an objective workable standard for filtering comments during its meetings. (ECF Nos. 167 at 30–32; 194 at 27.) She does not suggest that the School Board ever failed to publish a meeting agenda. Because Kuether at least indirectly acknowledged the School Board's meeting agenda as a standard for filtering off topic comments and points to no genuine dispute of material fact or legal argument against its

reasonableness, summary judgment is appropriate in favor of the School Board with respect to the facial constitutionality of its off-topic rule. Kuether does not materially advance, either in her own motion or in her opposition to the School Board's or individual defendants' motions, any argument that any other policy or practice related to public comment before the School Board is facially unconstitutional. (*See* ECF Nos. 167, 194, 195.)

The court will therefore grant the School Board's motion for summary judgment on the facial constitutionality of the speech infringement claim and deny Kuether's summary judgment motion in this respect.

**4.2(b) As-Applied Challenge**

Kuether also argues that the off-topic rule was not reasonably and neutrally applied to her. (ECF No. 167 at 30.) "An as-applied challenge is one that charges an act is unconstitutional as applied to a plaintiff's specific activities even though it may be capable of valid application to others." *Surita*, 665 F.3d at 875.

Kuether's brief in support of her motion for summary judgment generically cites to a cluster of over thirty proposed findings of fact (paragraphs 82–115) in support of her as-applied challenge. (ECF No. 167 at 30–32.) Within that cluster of paragraphs Kuether's proposed findings of fact reflect that defendants Peterson, O'Halloran, Gokalgandhi, and Herndon interrupted her and/or cut her off during public commentary at certain meetings. (ECF No. 190, ¶¶ 84–86, 87–92, 99–102, 107–117.) The defendants dispute these

proposed findings primarily on the basis that they rely on unauthenticated, incomplete transcripts of portions of the alleged meetings. (*See id.*)

The defendants contend they are entitled to summary judgment on this claim because the alleged infringements were all based on Kuether's violation of viewpoint neutral limitations on public commentary, such as the off-topic rule. (ECF No. 156 at 22–23 (citing ECF No. 157, ¶¶ 112–116).) Kuether disputes that her comments were off-topic or that her time had expired, as applicable. (ECF No. 196, ¶¶ 112–116.) The defendants also assert that they are entitled to qualified immunity because Kuether cannot show that she had a clearly defined constitutional or statutory right to exceed her time limit or speak off topic. (ECF No. 156 at 24.) But this argument again depends on a factual finding that Kuether exceeded her time and/or spoke off topic. The parties have not provided undisputed facts that would allow the court to conclude whether or not Kuether exceeded her time and/or spoke off topic.

Because the parties dispute several material factual conclusions that must be drawn from the relevant meetings, the as-applied speech infringement claim is not appropriate for summary judgment and all parties' motions will be denied in this respect.

**4.3. Due Process Violation**

Kuether alleges in the second amended complaint that Posley, Fermin and Cotton constructively discharged her in violation of 42 U.S.C. § 1983 and deprived her of her constitutional due process rights. (ECF No. 37, ¶¶ 151–57.) She claims they failed to give

her (1) an oral or written notice of the charges, (2) an explanation of [the School Board's] evidence, and (3) an opportunity to tell her side of the story. (*Id.*, ¶ 155.) Kuether and the three individually-named defendants all move for summary judgment on this claim. (ECF Nos. 156 at 24–29; 167 at 26–29.)

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "A procedural due process claim requires proof that the defendants (1) engaged in conduct under color of state law, (2) that deprived the plaintiff of a protected property interest, (3) without due process of law." *Bounds v. Country Club Hills Sch. Dist. 160*, 64 F.4th 926, 929 (7th Cir. 2023). Whether a protected property interest exists depends on state law. *Id.* In *Cleveland Board of Education v. Loudermill*, the Supreme Court determined that, "in the context of public employment, the essential requirements of due process are notice and an opportunity to be heard." *Draghi v. Cnty. of Cook*, 184 F.3d 689, 693 (7th Cir. 1999) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)).

The individual defendants argue that Kuether was not entitled to due process protection related to her reassignment because she did not have a protected property interest in a specific job assignment and her reassignment resulted in no reduction of salary, seniority, or status. (ECF No. 156 at 25–27.) Kuether alleges violations of the MPS or School Board policy but does not establish that she had a protected property interest in her specific job assignment that was recognized under state law. (ECF No. 167 at 26–

29.) She argues that she was forced out of work on medical leave due to objectively intolerable conditions imposed by her reassignment. (*See id.*; *see also* ECF No. 194 at 31.) The individual defendants do not argue that Kuether lacked a protected property interest in continued employment altogether. (*See* ECF No. 156 at 25–27.)

Even if Kuether had a protected property interest in continued employment, she does not explain how taking medical leave could amount to the deprivation of continued employment when she was still employed for years following the events giving rise to her medical leave. (ECF Nos. 167 at 26–29; 194 at 29–34.) The court concludes that taking medical leave does not amount to the deprivation of an interest in continued employment. *Cf. Green v. Brennan*, 578 U.S. 547, 555 (2016) (concluding that a constructive discharge claim requires that the employee "actually" resign). Accordingly, Kuether's motion will be denied, and the individual defendants' motion for summary judgment on her property-interest due process claim will be granted.

In addition to property interests that may exist in continued employment, "[t]he due process clause of the Fourteenth Amendment secures the liberty to pursue a calling or occupation." *Draghi*, 184 F.3d at 693. Kuether argues in her motion for summary judgment and in her opposition to the defendants' motion that the defendants deprived her of her "liberty interest in the preservation of her good name and career prospects and pinned upon her a 'badge of infamy.'" (ECF Nos. 167 at 29; 194 at 30.) The individual

defendants contend that Kuether never pled deprivation of a liberty interest and therefore cannot succeed on this theory. (ECF No. 200 at 10.)

"[M]ere defamation by the government does not deprive a person of 'liberty' protected by the Fourteenth Amendment, even when it causes serious impairment of one's future employment." *Hinkle v. White*, 793 F.3d 764, 767 (7th Cir. 2015) (citation omitted). Courts conduct what is referred to as a "stigma-plus" analysis to determine whether there was an injury to reputation *along with* a change in legal status, such as government deprivation of a right previously held. *Id.*

Count three, the due process claim, in Kuether's second amended complaint contains no reference to a liberty interest or the stigma-plus analysis and makes no allegation of harm to Kuether's career prospects or reputation. (ECF No. 37, ¶¶ 151–57.) The court concludes that Kuether did not identify a legal claim or allege facts evincing a liberty interest theory related to her due process claim. No such claim based on a liberty interest theory is properly before the court, and the court declines to exercise its discretion to construe Kuether's brief as a constructive motion to amend. *See Ollison v. Gossett*, 136 F.4th 729, 740 (7th Cir. 2025). To the extent Kuether seeks summary judgment on any liberty interest due process claim, it is denied and the individual defendants' motion is granted.

### 4.4. Discrimination under Title VII

Kuether alleges in her second amended complaint that the School Board discriminated against her based on her sex and race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a). (ECF No. 37 at 31–32.) She claims that her sex (female) and race (white) were "substantial motivating factor[s] in [the School Board's] decision to modify [her] employment terms and to constructively terminate her." (*Id.* at 31.) The School Board moves for summary judgment on this claim. (ECF No. 164 at 12–21.)

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive summary judgment on a Title VII discrimination claim, the plaintiff must present evidence, "whether direct or circumstantial, of discriminatory motivation to create a triable issue." *Rudin v. Lincoln Land Cmty. College*, 420 F.3d 712, 719 (7th Cir. 2005). Direct evidence, "if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption" and reveals an "intent to discriminate." *Id*. at 720. Circumstantial evidence allows the trier of fact to infer intentional discrimination. *Id*. The court considers the evidence presented "as a whole, rather than asking whether a particular piece of evidence proves the case by itself." *Ortiz v. Warner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

A plaintiff may also show discriminatory intent indirectly under the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case by producing enough evidence to support an inference of discriminatory motive. *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 308 (2025). The prima facie case is established by demonstrating: (1) membership in a protected class, (2) fulfillment of her employer's legitimate performance expectations, (3) an adverse employment action, and (4) that similarly situated employees who were not members of her protected class were treated more favorably. *Reives v. Illinois State Police*, 29 F.4th 887, 891 (7th Cir. 2022).

If the prima facie case is established, the employer must articulate some legitimate, nondiscriminatory reason for the adverse action. *Ames*, 605 U.S. at 308. Finally, the plaintiff must have a "fair opportunity" to demonstrate that the stated justification was pretext for discrimination. *Id.* Despite generally labelling the *McDonnell Douglas* inquiry as a "burden-shifting" framework, "the 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Id.* at 308 n.2.

**4.4(a) Constructive Discharge**

The School Board argues that Kuether cannot establish a discrimination claim based on constructive discharge because she never resigned from her position. (ECF Nos. 164 at 14; 202 at 4–5.) A claim of constructive discharge requires a plaintiff to "prove

first that [she] was discriminated against by [her] employer to the point where a reasonable person in [her] position would have felt compelled to resign. But [she] also must show that [she] actually resigned." *Green*, 578 U.S. at 555. Although Kuether disputes the School Board's justification for terminating her, she does not dispute that the School Board terminated her and offers no evidence that she resigned.[6] (*See* ECF No. 196, ¶ 15.) Therefore, she cannot establish a claim for constructive discharge based on her taking medical leave, and the court will grant the School Board's motion for summary judgment on the constructive discharge theory of Kuether's claim for sex and race-based discrimination.

**4.4(b) Modification of Employment Terms**

As for Kuether's claim that the modification of her employment terms constituted discrimination, the School Board argues that Kuether was not subject to an adverse employment action, was not meeting her employer's legitimate expectations, cannot identify any similarly situated employees who did not face substantially the same actions, and cannot establish any connection between her reassignment or other treatment and her race or sex. (ECF No. 165 at 14–21.) The School Board also contends that it had a

[6] While termination is a recognized form of adverse employment action, Kuether makes clear in her brief in opposition to the School Board's motion that she does not wish to litigate her termination in this case because she has a related claim pending with the Equal Rights Division of the Wisconsin Department of Workforce Development. (ECF No. 195 at 22 n.1.)

legitimate, non-discriminatory reason for Kuether's reassignment that was not pretextual. (*Id.* at 20.)

**4.4(b)(i) Adverse Employment Action**

In connection with her Title VII claim Kuether's response brief does not directly identify any adverse employment action taken against her. (ECF No. 195 at 18–19.) She vaguely references removal or reassignment of her subordinates, being belittled in meetings, and being prevented from presenting at regional school district meetings. (*Id.* at 19.) But Kuether offers no citations to any evidence in support of these contentions. *See United Cent. Bank v. Davenport Est. LLC*, 815 F.3d 315, 318 (7th Cir. 2016) (observing that the failure to "cite any applicable legal authority or provide support" constitutes an undeveloped argument that is waived).

Kuether claims that "many witnesses reported that Saffold and Holiday worked together against Kuether and that they increased the retaliation after Fermin told Holiday that Kuether brought him the MTEA complaints and Holiday believed that 'white wom[e]n' were conspiring against 'an educated black man.'" (ECF No. 195 at 19 (citing ECF No. 197, ¶ 21).) But the proposed finding of fact which Kuether cites in support of that contention states, "Holiday testified that he believes that the accusation that he spoke inappropriately to women was a part of an 'effort to destroy [him], an educated black main [sic].'" (ECF No. 197, ¶ 21.) Even if true, this statement does not supply evidence of

an adverse employment action against Kuether. It merely supplies Holiday's theory that other individuals acted on the basis of *his* race.

Kuether also contends that several witnesses will testify that "Saffold and Holiday united against Kuether" and regularly met and discussed Kuether. (ECF No. 195 at 19.) But, again, this allegation does not reveal an adverse employment action.

The remainder of Kuether's argument addresses her employer's expectations, (allegedly) similarly situated employees, and issues with the School Board's literacy curriculum. (ECF No. 195 at 16–21.) Kuether claims she is entitled to summary judgment on her Fourteenth Amendment equal protection claim and asserts that the School Board constructively discharged her. (*Id.* at 21–23.) She addresses the School Board's motion for summary judgment on her Title VII retaliation claim. (*Id.* at 23–26.) Kuether claims she is entitled to summary judgment on hostile work environment and constructive discharge claims under Title VII. (*Id.* at 26–29.) Kuether then addresses the First Amendment claims already resolved in this decision. (*Id.* at 29–33.) Nowhere throughout these arguments does Kuether attempt to tie to her claim for sex or race-based discrimination to any action that may be construed as adverse. (*Id.* at 16–33.) Without identifying an adverse action, Kuether has not stated a prima facie case for discrimination.

**4.4(b)(ii) Discriminatory Animus**

Even *if* Kuether's job reassignment was an adverse action that established a prima facie case, she has not identified any evidence from which a reasonable factfinder could

infer that the School Board's stated reason for the reassignment was pretext for discrimination. The School Board claims that "Dr. Posley made the decision to reassign Kuether based on reported animosity and insubordination towards Dr. Saffold as a strategic step necessary to get the work done for the sake of the students." (ECF No. 164 at 20 (citing ECF No. 157, ¶¶ 60–65).) Kuether disputes the underlying facts but does not identify a dispute of *material* fact because she does not contend that the rationale was pretext for a sex or race-based animus. (*See* ECF No. 196, ¶¶ 60–65).

In fact, Kuether does not identify any evidence in opposition to the School Board's motion that supports an inference of discriminatory animus against her. (*See* ECF No. 195.) She claims, without citation, that "Holiday spoke inappropriately to women on the basis of their sex." (*Id.* at 24 (internal quotations omitted).) She also asserts that another employee, Angela Ford, will testify that Saffold and Holiday expressly told her that "they" (meaning "Black people") "needed to stick together" and that Ford observed that Saffold was "mean spirited towards [Kuether], often singling her out." (*Id.* at 27.) These vague allegations about race and sex do not support an inference that Kuether specifically was treated differently on the basis of her race or sex.

A plaintiff cannot rest on the allegations in her complaint at the summary judgment stage. *See Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) ("[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of

events." (citation and internal quotations omitted). Kuether has not identified any evidence that would permit a reasonable factfinder to conclude that her race or sex subjected her to an adverse employment action. *See Ortiz*, 834 F.3d at 765 (observing that the correct legal standard that "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action").

The court will therefore grant the School Board's motion for summary judgment on Kuether's Title VII discrimination claim in its entirety, including race and sex-based discrimination under her theories of constructive discharge and modification of employment terms.

**4.5. Retaliation under Title VII**

Kuether alleges in her second amended complaint that the School Board retaliated against her in violation of Title VII, 42 U.S.C. § 2000e3. (ECF No. 37, ¶¶ 158–161.) She claims that the School Board subjected her to discriminatory terms and conditions of employment and constructively discharged her because she engaged in activities protected by Title VII—namely, opposing discrimination in the workplace. (*Id.*, ¶¶ 159–60.) The School Board moves for summary judgment on this claim. (ECF No. 164 at 22–30.)

"Title VII prohibits employers from retaliating against employees for complaining about unlawful employment practices." *Kedas v. Ill. Dep't of Transp.*, 149 F.4th 951, 958

(7th Cir. 2025) (citing 42 U.S.C. § 2000e-3(a); *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006)). "To prevail on a Title VII retaliation claim, the plaintiff must prove that (1) she engaged in an activity protected by the statute; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Anderson v. Street*, 104 F.4th 646, 654 (7th Cir. 2024).

If the plaintiff establishes a prima facie case of retaliation, the defendant "must then offer a legitimate, nondiscriminatory reason for its adverse action." *Brooks v. City of Pekin*, 95 F.4th 533, 539 (7th Cir. 2024). "If the employer has offered a nondiscriminatory explanation for its action, a Title VII claim turns on whether there is sufficient evidence for a reasonable jury to conclude that the explanation is pretext for illegal discrimination or retaliation." *Upchurch v. Indiana*, 146 F.4th 579, 587 (7th Cir. 2025). "Pretext is a lie, specifically a phony reason for some action, not just faulty reasoning or mistaken judgment on the part of the employer." *Id.* (cleaned up) (citations omitted).

To constitute an "adverse employment action" for purposes of a Title VII retaliation claim, the "challenged action must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Lewis v. City of Chi.*, 496 F.3d 645, 655 (7th Cir. 2007) (citation omitted). Such actions include "changing the conditions in which [an employee] works … in a way that subjects [her] to a humiliating, degrading, unsafe, unhealthful, or

otherwise significantly negative alteration in [her] workplace environment." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (citation and internal quotations omitted)).

As for Kuether's allegation that she faced an adverse employment action in the form of constructive discharge, the court already determined in the context of Title VII discrimination that Kuether cannot establish she was constructively discharged because she did not resign from her position. *See Green*, 578 U.S. at 555 (observing that a claim for constructive discharge requires that the plaintiff "actually resigned"). The lack of resignation likewise precludes a finding of constructive discharge in the retaliation context.

With respect to Kuether's allegation that she faced "discriminatory terms and conditions of employment," Kuether's brief in opposition to the School Board's motion largely fails to identify what conditions she actually faced. (ECF No. 195 at 25–26.) She makes vague allegations that race was a "significant factor" in the school district, that retaliation should be expected, and that "Posley created a culture of retaliation." (*Id.*) None of these identify a condition of employment. She also states, without citation, under a subheading about adverse employment actions, "See the above section on constructive discharge." (*Id.* at 25.) In the portion of her brief directed at constructive discharge, Kuether argues that the School Board told her she was no longer an employee, cut off her access to its computer systems and her access badge, altered her job duties in contravention of district policy, eliminated her prior position, and diverted her payroll

during her medical leave. (*Id.* at 22–23.) Kuether contends, without citation, that the evidence is "undisputed" that she "went out on medical leave because of those conditions." (*Id.* at 23.)

Even if the court found that the circumstances surrounding Kuether's reassignment and medical leave constitute an adverse employment action *and* that her alleged complaints constitute protected activity under Title VII (ECF No. 195 at 23–24), Kuether has not provided evidence of a causal link between any employment action and her alleged complaints. Kuether claims that the School Board, through Posley, Fermin, and Holiday, knew of her protected activity and that knowledge motivated the retaliation against her. (ECF No. 195 at 24–25.) She claims, without citation, that Posley and Fermin lied about their knowledge of her complaints and, separately, again without citation, that Holiday, Saffold, and Posley lied about their knowledge of her complaints. (*Id.* at 24, 26.) She also claims that "Holiday's own words condemn him as a sexist and a racist" and that "witnesses identified Saffold as engaging in racism or else as acting on Holiday's behalf, i.e. allowing her actions to be justified or guided by his racism." (*Id.* at 26.) None of these generalized allegations suggest a causal connection between Kuether's complaints and any allegedly adverse employment action taken against her.

Knowing about protected activity alone does not create a triable issue on causation. *See Durkin v. City of Chi.*, 341 F.3d 606, 614 n.4 (7th Cir. 2003) (observing that employer's knowledge of protected activity is implicit in first element of prima facie case

for retaliation); *cf. Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's *knowledge* of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'") (emphasis added). Kuether does not offer any basis, beyond knowledge of her complaints, on which a reasonable jury could infer a causal link to any adverse action taken against her. "To conclude that retaliation was the real motive based on this evidence borders on pure speculation, and as [the Seventh Circuit Court of Appeals] [has] stated '[s]peculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'" *Sanchez v. Henderson*, 188 F.3d 740, 747 (7th Cir. 1999) (citations omitted) (finding temporal proximity did not create triable issue on causation).

Because Kuether has not put forth evidence on which a reasonable factfinder could infer a causal link between allegedly protected activity and allegedly adverse employment actions, no reasonable jury could find that illegal discrimination or retaliation motivated an adverse employment action against Kuether. The court will therefore grant the School Board's motion for summary judgment on the Title VII retaliation claim.

### 4.6. Equal Protection Clause

Kuether alleges in her second amended complaint that defendants Posley, Fermin, and Holiday discriminated against her in violation of the Equal Protection Clause of the Fourteenth Amendment, made actionable under 42 U.S.C. § 1983. (ECF No. 37, ¶ 162.) She claims that these three defendants discriminated against her on the basis of her race and sex without a rational basis for doing so. (*Id.*)

The three defendants move for summary judgment on this claim. (ECF No. 156 at 29.) They invoke the School Board's arguments in support of summary judgment on Kuether's Title VII discrimination claim because the two claims require the same analysis. (*Id.* (citing ECF No. 164 at 14–21).) "[T]he same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection." *Williams v. Seniff*, 342 F.3d 774, 788 n.13 (7th Cir. 2003). "The only difference between a claim under Title VII and a claim under § 1983 is who can be named as a defendant in the action." *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006).

Kuether does not address her Equal Protection claim in response to the individual defendants' motion for summary judgment. (*See* ECF No. 194.) Instead, she addresses this claim in her response to the School Board's motion, even though the Equal Protection claim is only brought against the three individual defendants. (ECF No. 195 at 21–22.) She does not cite to any evidentiary support but contends that, under "the totality of the circumstances and all evidence adduced, there is sufficient proof to support the

conclusion that [she] was denied equal protection based on racial and sexual discrimination." (*Id.* at 21.)

The lack of evidentiary citation and analysis does not constitute a serious effort to respond to the defendants' arguments. *See Donelson v. City of Chi.*, 272 F. Supp. 2d 717, 726 (N.D. Ill. 2003) (finding that the plaintiff abandoned her hostile work environment claim because, although she "continuously avers in a somewhat nebulous manner that [her supervisor] 'harassed' her, she provides no legal arguments in support of a hostile work environment claim and makes no serious effort to respond to the City's arguments against it"). In any event, this claim fails for the same reasons as her Title VII discrimination claim. Kuether has not identified any evidence that would permit a reasonable factfinder to conclude that her race or sex subjected her to an adverse employment action. The court will therefore grant the three individual defendants' motion for summary judgment on the Equal Protection claim.

**4.7. Hostile Work Environment**

Kuether argues in response to the School Board's motion for summary judgment that she pled "harassment or hostile work environment claims" based on her pleading of the "terms and conditions" language in her second amended complaint. (ECF No. 195 at 29 (providing no citations).) Although in reference to the Title VII discrimination and retaliation claims she pleaded that the defendants altered the terms and conditions of her employment (ECF No. 37 at 31–32), she did not allege that the overall environment in

which she worked was illegally hostile. *See Hizer v. S. Bend Trib.*, 31 F. Supp. 3d 986, 1000 (N.D. Ind. 2014) ("Hostile work environment claims are different from disparate treatment claims because the issue is not whether particular acts constitute employment discrimination or retaliation, but whether the overall environment in which a plaintiff worked was illegally hostile."). Accordingly, no claim based on a hostile work environment is properly before this court.

Kuether contends that she should be permitted to amend her pleadings at summary judgment because she is not advancing a new legal theory. (ECF No. 195 at 29.) She offers no further analysis or legal support for her request to amend the pleadings. (*See id.*)

"[D]istrict courts retain discretion to interpret new factual allegations or claims presented in a plaintiff's briefs as a constructive motion to amend." *Ollison*, 136 F.4th at 740. However, "justice will rarely require leave to amend in the context of new claims presented for the first time in opposition to a motion for summary judgment." *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 489 (7th Cir. 2023). If the court elects to treat a new claim as a constructive motion to amend, "it should apply the familiar standards governing when leave to amend should be granted, paying particular attention to the potential for prejudice to other parties." *Id.* at 490.

Federal Rule of Civil Procedure 15(a)(2) instructs courts to freely grant leave to amend "when justice so requires." "[L]eave may be denied on account of undue delay,

prejudice, bad faith or dilatory motives, futility, or judicial economy." *Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 94 F.4th 588, 607 (7th Cir. 2024). To prove a hostile work environment claim under Title VII, a plaintiff must establish (1) she was subject to unwelcome harassment; (2) the harassment was based on a protected characteristic, such as her race or sex; (3) the harassment was so severe or pervasive as to alter the conditions of her work environment; and (4) there is a basis for employer liability. *Paschall v. Tube Processing Corp.*, 28 F.4th 805, 812–14 (7th Cir. 2022).

Kuether claims that certain colleagues observed a "toxic" work environment and heard statements from Holiday and Saffold that "Black people" need to "stick together." (ECF No. 195 at 26–27.) Kuether also claims she was "subject to physical intimidation and assault and to public humiliation" and that she suffered traumatizing physical and psychological effects from her hostile work environment. (*Id.* at 27–28.) None of these statements suggest that Kuether herself faced harassment due to her race or sex. Because amendment would be futile, the court denies Kuether's request to amend her complaint to add a Title VII claim based on a hostile work environment.

**4.8. First Amendment Retaliation – Protected Speech**

Kuether argues in her brief in support of summary judgment that Holiday physically assaulted her "because of her protected speech." (ECF No. 167 at 32–35.) But Kuether did not plead a First Amendment claim based on protected speech (which is plainly distinct from her claim based on freedom of association with the Teachers Union),

nor did she put any physical altercation at issue in her second amended complaint. (*See* ECF No. 37.) She repeats this retaliation argument in her brief in opposition to the individual defendants' motion, arguing that Holiday violated her free speech rights by physically assaulting her in retaliation for making and presenting complaints against him. (ECF No. 194 at 28.) But it has no place in a response brief because the individual defendants understandably did not raise an issue that was never pled in the complaint.

Kuether argues in her reply brief that her second amended complaint put Holiday on sufficient notice of this claim because it includes allegations that Holiday violated her First Amendment rights and "numerous fact paragraphs about the assault and the [Teachers Union]." (ECF No. 204 at 9–10.) The court disagrees with Kuether's characterization of the second amended complaint. The factual allegation in Kuether's second amended complaint that Holiday caused Kuether physical and emotional injuries when he "slammed" the door on her in November 2022 was insufficient to put Holiday on notice that Kuether intended to bring a First Amendment retaliation claim against him in connection with that incident. (ECF No. 37, ¶¶ 102–04.)

Kuether alleges First Amendment violations in counts one and two of her second amended complaint, but count one does not reference a physical altercation (ECF No. 37, ¶ 139 (alleging that the defendants "threatened to discharge, subjected Kuether to discriminatory terms and conditions, and constructively discharged Kuether"), and count two does not name Holiday as a defendant (*Id.*, ¶¶ 147–50). Read in comparison

with the second amended complaint, the court construes Kuether's summary judgment brief as attempting to advance a new legal claim rather than a new legal theory.

As stated above, "district courts retain discretion to interpret new factual allegations or claims presented in a plaintiff's briefs as a constructive motion to amend." *Ollison*, 136 F.4th at 740. In light of the substandard briefing on this issue, which is woefully lacking in citations to legal authority and evidentiary support, albeit consistent with the remainder of the plaintiff's briefing tolerated by the court in connection with the motions resolved today, the court is disinclined to exercise its discretion to entertain a constructive motion to amend. (*See* ECF No. 167 at 32–35.) It would be unduly prejudicial to Holiday to add a claim predicated on such distinct facts, of which he has not been noticed, at this late stage of litigation. *See Ollison*, 136 F.4th at 741 (concluding that the defendant "did not have fair notice of the claim" even though facts upon which it was predicated were "mentioned in discovery requests, depositions, and expert reports").

The court therefore denies Kuether's request to amend her complaint to add a First Amendment retaliation claim based on Holiday's alleged physical assault.

**5. Conclusion**

**IT IS THEREFORE ORDERED** that the individual defendants' motion for summary judgment (ECF No. 155) is **granted in part and denied in part** as set forth herein. Kuether's claims for violation of the First Amendment based upon political

association and speech infringement as applied to her shall survive. The individual defendants' motion is granted in all other respects.

**IT IS FURTHER ORDERED** that the defendant School Board's cross-motion for summary judgment (ECF No. 163) is **granted in part and denied in part** as set forth herein. Kuether's claim for violation of the First Amendment based upon speech infringement as applied to her shall survive. The School Board's motion is granted in all other respects.

**IT IS FURTHER ORDERED** that Kuether's motion for partial summary judgment (ECF No. 166) is **denied** in its entirety.

The Clerk of Court shall schedule a status conference to address how the case will proceed.

Dated at Milwaukee, Wisconsin this 27th day of August, 2026.

WILLIAM E. DUFFIN
U.S. Magistrate Judge